Dennis Boyd WILDE, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–232.

Supreme Court of Wyoming.

Sept. 9, 1985.

Larry N. Long, Salt Lake City, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Senior Asst. Atty. Gen., and Sylvia Lee Hackl, Asst. Atty. Gen., Cheyenne, for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant was charged with possession of a controlled substance (cocaine) with intent to deliver, in violation of § 35–7–1031(a)(ii), W.S.1977. He was convicted by a jury and sentenced to a term of not less than one and one-half nor more than two and one-half years in the state penitentiary. Appellant raises the following issues on appeal:

The trial court abused its discretion by denying defendant's motion for a continuance.

The trial court should not have allowed testimony from the officer regarding defendant's confession.

The trial court should have suppressed evidence obtained from a van since the search of it was not by consent and the search was conducted without a warrant.

On August 26, 1983, Deputy Ferrin, an investigator with the Teton County Sheriff's Office, received a phone call from a previously reliable informant. This informant, calling from Cody, told the deputy that she had seen two men, named Dennis and Les, handing out cocaine at a swimming hole in Cody, and that they had been

staying at the Rainbow Park Motel. She also said that they were heading into Jackson to distribute more cocaine and were driving a gold colored van with Montana license plates. Deputy Ferrin confirmed the fact that two men driving a gold colored van with Montana license plates had stayed at the Rainbow Park Motel in Cody, and had checked out that morning.

Shortly after noon, a local law enforcement officer in Jackson observed a van meeting the description furnished to Deputy Ferrin. After the van had stopped at the Executive Inn in Jackson, the officer approached the single occupant of the van and requested identification, which was produced. The officer then radioed for assistance, and two other officers, including Deputy Ferrin, responded immediately.

The officers informed the driver of the van, appellant Dennis Wilde, that they had information that there was a large amount of cocaine in the van and requested permission to search the vehicle. The officers testified that Wilde consented to the search, but Wilde testified that he was scared and that he said nothing. The officers did search the van, and found large amounts of cash and of what was later proven to be cocaine and also a .357 magnum revolver. After having been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974, reh. denied 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966), Wilde told the officers that he was just holding the cocaine and the cash for a friend that he had dropped off at the airport, and that he had been "set up." Wilde repeated this story to the officers as they drove him to the jail.

At approximately 4:00 that afternoon, Wilde was brought to Deputy Ferrin's office, where he was again advised of his rights pursuant to *Miranda v. Arizona*, supra. Wilde then signed a waiver of such rights, and he told the deputy that he was acting as a "middle man," introducing people who wanted to buy drugs to people who sold them. Deputy Ferrin testified that he had tried to tape record this conversation by use of a hidden tape recorder, but that something had gone amiss and the conversation had not been recorded. Wilde testified that he knew Ferrin was recording the conversation, because the tape recorder was not hidden, but was sitting on the desk, and that the only reason he talked to Ferrin was because he believed his statement would be protected as to accuracy by the recording; he said that he had only repeated his story that he had been "set up."

Wilde was charged with possession with intent to deliver a controlled substance. Subsequently he and his girl friend, Gay Arneson, contacted Deputy Ferrin to have the van released from impoundment. The van belonged to Arneson. Upon learning that the van would not be released until a thorough search could be conducted, both Wilde and Arneson signed a form consenting to the search. When Deputy Ferrin conducted the search, he found several items such as a balance beam and gram measurement, a razor blade coated with a white residue, spoons, a sifter, and a container of Ultracane, a substance commonly used to dilute cocaine for street sale.

## MOTION FOR CONTINUANCE

Appellant's first attorney was A.A. Zvegintzov. On February 23, 1984, at the arraignment, appellant indicated that he was satisfied with Mr. Zvegintzov's representation of him up to that point. The trial judge set March 6, 1984 as the final date for the defendant to file all motions, and April 6 as the final date for discovery. The trial was set for May 14, 1984.

Several motions were filed by Mr. Wilde's attorney, including a Motion to Suppress Evidence, a Motion to Suppress Statements, a Motion for Discovery and a Motion for Additional Preliminary Examination. A motions hearing was held on April 30, 1984. At the beginning of that hearing, Mr. Zvegintzov informed the court that Mr. Wilde had called him the night before and had fired him. Mr. Wilde, who was in attendance at the hearing, verified

this and stated that he had not had a chance to find a new attorney.

The trial judge denied Zvegintzov's request to be removed as counsel, and the hearing proceeded as scheduled. Mr. Wilde's new attorney, Mr. Long, entered his appearance on Monday, May 14, the first day of the trial. On May 11, 1984, the Friday prior to the 14th, Mr. Long made a motion, over the telephone, to have the trial continued. The motion was denied; the appellant argued this to be an abuse of the trial court's discretion and that it resulted in ineffective assistance of counsel.

 Such a motion for continuance is addressed to the sound discretion of the trial court, and we will not disturb the ruling on it unless the discretion has been abused. *Ash v. State*, Wyo., 555 P.2d 221, 225 (1976), reh. denied 560 P.2d 369, cert. denied 434 U.S. 842, 98 S.Ct. 139, 54 L.Ed.2d 106 (1977); *Irvin v. State*, Wyo., 584 P.2d 1068, 1073 (1978); *Adger v. State*, Wyo., 584 P.2d 1056, 1058–1059 (1978). An abuse of discretion occurs when a court acts in a manner which exceeds the bounds of reason under the circumstances. The question is whether a court could reasonably conclude as it did. *Martinez v. State*, Wyo., 611 P.2d 831, 838 (1980).

An abuse of discretion did not occur here. Mr. Long did not enter his appearance until the first day of the trial, May 14, at which time he filed an Appearance of Counsel and Renewal of All Motions Heretofore Made by Prior Defense Counsel, relating in part:

"COMES NOW, Larry N. Long, Attorney for Defendant, and hereby makes his Appearance as Counsel for the above-named Defendant and certifies that he has read the file in the above-entitled matter and that he is as ready as he possibly could be under the circumstances and that he certifies that he understands that there will be no continuances in this matter although he made such a Motion on Friday Afternoon last during a telephone conversation with his Honor

based upon the fact that he had just been retained that very afternoon by the Defendant and had not had ample time to prepare an adequate defense."

However, the record shows that he had contacted Mr. Zvegintzov on May 5, at which time he received a full review of the case.[1] He also renewed all the motions that had been made by Mr. Zvegintzov. Furthermore, Mr. Zvegintzov was required by the trial court to be present at counsel table during the entire trial to assist Mr. Long.

The trial judge also made it clear that he thought the defendant was receiving good representation, by Mr. Zvegintzov at the motions hearing, after he had been fired:

"THE COURT: Mr. Zvegintzov, let me say for an attorney that's been fired that was an excellent cross examination. The Court wants to commend you for understanding what the rules are, and knowing we have a Wyoming Supreme Court case on all fours. The opinion's written by Justice Guthrie with reference to lawyers who have been fired or want to withdraw in a criminal case. Once there, you're there until the Court allows you to withdraw, which I have not done. You obviously are familiar with that case, and I want to compliment you for being so well prepared for this even though you were fired."

And by Mr. Long:

"THE COURT: Now, what I want to say was, now, Mr. Wilde, you're being well represented; you understand that?

"MR. WILDE: Yes, sir.

"THE COURT: Mr. Long, you're doing a good job.

"MR. LONG: Thank you, your Honor.

"THE COURT: That was a good cross examination * * *

\* \* \* \* \* \*

"THE COURT: You were hired to have him found not guilty and you did a good job, Mr. Long."

---

1. Mr. Long apparently was contacted as early as May 5, but did not enter his appearance until the 14th because he did not receive his retainer until then.

It is clear that the defendant contacted Mr. Long in sufficient time to prepare for the trial, and that Mr. Long was in fact preparing for trial prior to his official entry of appearance. The only delay appears to be due to the defendant's failure to pay Mr. Long a retainer until the last moment.

■ We have said before that a court is justified in refusing to allow a defendant to manipulate the orderly procedure of the court by the exercise of his right to counsel. *Irvin v. State,* supra, 584 P.2d at 1073. With this in mind, and no manifest injustice being shown, we hold that it was not an abuse of discretion by the trial court to deny the motion for continuance.

## TESTIMONY

At trial, Deputy Ferrin testified about a conversation had between himself and the defendant. The deputy's testimony as to what the defendant said was in direct conflict with the defendant's testimony at trial. The defendant objected to this testimony because Deputy Ferrin had attempted to tape record the conversation, but due to some mishap, the attempt was not successful, i.e., the tape did not contain the conversation. Appellant argues that the prosecution has a duty to preserve and disclose evidence compiled by any of the government's agencies, citing *United States v. Bryant,* 439 F.2d 642 (D.C.Cir.1971).

■ This latter argument would hold more weight if there was a showing that the deputy had recorded the conversation and then erased it. As it is, however, the government has no duty to manufacture evidence, it has only a duty to produce exculpatory evidence within its possession.

■ If the government had possession of exculpatory evidence, failure to produce it would violate due process where the evidence is material to either guilt or punish-

ment, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–1197, 10 L.Ed. 215 (1963). The United States Supreme Court has discussed the State's duty to preserve evidence, and held that such duty is limited to evidence which can be expected to play a significant role in the defendant's defense; such "evidence must possess an exculpatory value" apparent before its destruction, and "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* — U.S. —, —, 104 S.Ct. 2528, 2529–2530, 81 L.Ed.2d 413 (1984).

■ Appellant's argument fails in two respects: This is not a case of evidence which was destroyed[2], and there is comparable evidence readily available, inasmuch as both Deputy Ferrin and Wilde, himself, testified as to the substance of the conversation. The jury could thus choose which rendition to believe, and they believed Deputy Ferrin. We see no reason to disturb that finding of fact here.

## SEARCH OF VAN

Appellant argues that the initial search of the van, at the time he was arrested outside the Executive Inn, was not pursuant to a valid consent. At trial Wilde's testimony was limited to the circumstances surrounding his conversation with Deputy Ferrin in the latter's office. But there was a motions hearing specifically on the issue of consent to search the van. At that hearing, Deputy Ferrin testified:

"A I stated to Mr. Wilde that I had information to believe that there was a large amount of cocaine in his van and I would like permission to search his van.

---

2. Deputy Ferrin testified that the recorder used was hidden in a wall, and activated by a switch on another wall. He and the officer who shared an office with him tried to keep a new tape in the machine at all times. He speculated that the machine was accidently activated by someone who thought the switch was a light switch, causing the tape to record office background noise, thus when he switched on the machine to record Wilde, the tape had already run. In any event, the tape at no time contained the conversation between Ferrin and Wilde.

"Q Okay. Now, how long did this conversation last?

"A Just as long as it took me to say it to you.

"Q What was Mr. Wilde's response to that?

"A He stated, 'You're [sic] information is bad. Go ahead and search my van.'

"Q Okay.

"A This was after I had identified myself, also as working for the sheriff's office."

At the trial, outside of the hearing of the jury, Mr. Wilde testified:

"Q [By Mr. Long] That's at the point where Ferrin confronted you with the information that he had that you had a large amount of cocaine in the van?

"A Yes.

"Q And then tell us what happened.

"A I was shocked and very scared at the time. And he said he wanted to search the van, and I don't remember saying anything. I was so amazed. I was thinking to myself, I'm wondering if the person that it belonged to had taken it with him when I dropped him off.

 * * * * * *

"Q (By Mr. Fix) I'm not quite sure, then, Mr. Wilde, what you're saying. They went ahead and searched the van without your consent?

"A Yes.

"THE COURT: No, he said he didn't say anything that he remembers.

"A I didn't give consent.

"Q (By Mr. Fix) You didn't say anything?

"A No, not that I remember."

The court ruled that there was a consent which was freely and voluntarily given. Appellant argues that he was surrounded by three police officers, that he was afraid and told not to move, and that any consent was not voluntary but a mere submission to authority. Further, appellant claims in this brief, "no sane man who denies his guilt would actually be willing to allow authorities to search his vehicle for contraband which is certain to be discovered."

Fortunately, we have the impressions of the trial court relative to the argument that Wilde was somehow "bullied" or frightened, by the multitude of officers confronting him, into giving a consent.

" * * * I would like the record to show the Court's observations with reference to Mr. Wilde. He is a young, healthy male, caucasian. Obviously in good health. He's husky, looks strong, looks tough, however that is, not the kind of a person who could be easily intimidated by anyone. I want the record to show that. * * * "

The general rule is that warrantless searches and seizures are unreasonable, both under the Fourth Amendment to the United States Constitution and Art. 1, § 4, of the Wyoming Constitution, with a few well-established exceptions. *Hunter v. State*, Wyo., 704 P.2d 713 (1985). One of these exceptions is a search pursuant to valid consent. *Ortega v. State*, Wyo., 669 P.2d 935, 941 (1983); *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). A valid consent is one which is voluntary, in light of the totality of the circumstances. *Amin v. State*, Wyo., 695 P.2d 1021, 1024 (1985); *Stamper v. State*, Wyo., 662 P.2d 82, 87 (1983). The burden is on the State to prove by a preponderance of the evidence that the consent was voluntary. *Stamper v. State*, supra. This involves a question of fact, and on appeal the evidence is viewed in a light most favorable to the prevailing party below. *Amin v. State*, supra.

At the motions hearing, the trial court heard the testimony of two of the officers present at the arrest. At the trial the issue was reargued with the same two officers testifying again, and in addition the defendant and the third officer testified. The trial court ruled both times that the consent was voluntary. Viewing the evidence in the light most favorable to the State, we must agree with the trial court's ruling. Three police officers testified that appellant consented to the search, while appellant merely said that he was shocked

and scared and didn't remember saying anything.

Appellant urges that under *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790 (1925), and *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), probable cause and exigent circumstances are required. We need not reach this argument, inasmuch as we find defendant's consent to have been voluntarily given.

Accordingly, the trial court is affirmed in all respects.