**CITY OF LARAMIE, Petitioner (Appellee/Plaintiff),**

v.

**Andrew HYSONG, Respondent (Appellant/Defendant).**

No. 90–219.

Supreme Court of Wyoming.

March 19, 1991.

Jane H. Juve and Hugh B. McFadden, Jr. of Corthell & King, Laramie, for petitioner.

Glenn A. Duncan, Laramie, for respondent.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

Upon a petition for a writ of certiorari, the City of Laramie (City) seeks reversal of the district court's reversal of Andrew Hysong's conviction of interfering with a police officer in violation of the city code. Laramie, Wyoming, Code, Tit. 9, ch. 9, § 30 (1982) (as amended). *See Sowerwine v. State,* 767 P.2d 181 (Wyo.1989).

The district court, in an appellate capacity, overturned the ruling of the municipal court. The City's petition asks whether the district court erred in overturning the municipal court's findings of fact that the city police officer, acting on a child abuse report, was properly acting within the scope of his official duties in entering the Hysong residence to inspect the Hysongs' child. This court granted the petition because the question presents an issue of importance pursuant to W.R.A.P. 13.

We reverse the district court's decision and reinstate the municipal court's judgment of conviction.

## FACTS

At 3:00 p.m., Sunday, April 1, 1990, a city police officer received a report of possible child abuse that had allegedly occurred at 10:30 a.m. that day in a local drug store. According to two store clerks who witnessed the incident, a male adult, presumably the child's father, forcibly jerked the child, a boy about two or three years old, out of a shopping cart in a manner that possibly injured the child's arm. As the adult dangled the child by his arm, he spanked the child and continued to do so all the way out of the store; all the while the child was crying. The adult placed the child in a Chevrolet Blazer parked in the store's parking lot. One of the store clerks believed the adult continued striking the child in the Blazer because of the movement of the adult's arms and shoulders. Based on what they had seen, both clerks stated their belief that the adult had probably injured the child.

After investigating the information provided in the store clerks' report, including the license number of the Blazer, the officer determined that Andrew Hysong was a suspect. The officer contacted the on-call social worker for the Department of Public Assistance and Social Services (D–PASS) and together they visited the Hysong residence. This occurred within an hour after receiving the initial report. The Blazer was not there; no one was home. During the remainder of his shift, the officer periodically drove by the residence to see if the Hysongs had returned, but it was not until 8:00 p.m., four hours after he first checked the residence, that the officer saw that the Hysongs had returned home. The officer and the D–PASS social worker visited the residence at that time. The officer, who was in uniform, knocked on the front door; Mr. Hysong looked out the window, opened the door, and asked what they wanted. The officer introduced himself and the D–PASS social worker, explained the reported alleged incident, and asked if they could check the child's condition. Mr. Hysong refused to let them in without a search warrant.

After further conversation between Mr. Hysong and the officer, Mrs. Hysong came to the door. She knew the officer because she worked for the City. The officer explained the situation to her. According to the officer's trial testimony, in response to his explanation and request to check the child's condition, Mrs. Hysong said, "Okay." According to Mrs. Hysong's trial testimony, the house belongs to her hus-

band and her, and in response to the officer's explanation and request, she merely said, "See, he's O.K." The child, object of the officer's concern, was at that moment inside the house and several feet from the front door.

The officer, believing Mrs. Hysong had consented to his entry, started to enter, but was met by Mr. Hysong's resistance which caused a scuffle. It was that resistance on Mr. Hysong's part that supported the criminal charge on which his conviction was based. Mr. Hysong argued that his resistance was justified because of the officer's warrantless entry. The municipal court determined, however, that the entry was lawful due to exigent circumstances and Mrs. Hysong's possible consent.

Mr. Hysong appealed his municipal court conviction to the district court. In its decision letter the district court stated, "The legal issue for this court to decide is whether the police officer had probable cause to enter the home and inspect the child without a search warrant." Answering that question in the negative, that court based its reversal of Mr. Hysong's conviction on the following:

1. An adequate amount of time had elapsed before any action was taken by the police officer for him to obtain a search warrant in order to legally enter the Hysong residence;

2. There was insufficient evidence which proves that exigent circumstances actually existed in order to permit a "warrantless" search, nor was consent voluntarily obtained;

3. The testimony of the police officer admitting that he went to the residence with no intention of making an arrest leads this court to conclude that the officer was erroneous in entering the appellant's home without a search warrant.

The City's petition for writ of certiorari followed.[1]

## DISCUSSION

■ The municipal court of the City of Laramie is a court of limited jurisdiction and is, in the judicial context, inferior in jurisdiction to the district court. An appeal from the municipal court's judgment to the district court is governed both by the Wyoming Rules of Appellate Procedure and the Wyoming Rules of Appellate Procedure for Courts of Limited Jurisdiction. W.R.A.P. 1.01; W.R.A.P.C.L.J. 1.01; W.S. §§ 5–6–106 and 107 (Cum.Supp.1990). There shall be no trial de novo in the district court exercising its appellate jurisdiction. The district court may reverse the municipal court's judgment for errors appearing on the record. W.R.A.P. 1.03.

■ In its appellate jurisdiction, the district court is governed by the same appellate principles and standards of review that govern this court in its exercise of appellate jurisdiction. This court has announced these principles and standards countless times; they are so universally understood and accepted that we need not cite authority for them. The trial court's findings of fact are presumed to be correct, and an appellate court shall not disturb them unless they are inconsistent with the evidence, clearly erroneous, or contrary to the great weight of the evidence. On questions of law, an appellate court accords no special deference to, nor is it bound by the trial court's decision. However, if the trial court's judgment is sustainable on any legal ground or theory appearing in the record, an appellate court must affirm that judgment, even if the legal ground or theory articulated by the trial court as sustaining the judgment is incorrect.

■ The foregoing appellate principles and standards of review apply in the realm of the law of search and seizure. It is elementary that our federal and state constitutions prohibit "unreasonable searches and seizures." U.S. Const. amend. IV; Wyo. Const. art. 1, § 4. Subject to certain recognized exceptions, warrantless searches and seizures are per se unreasonable. *Wilde v. State,* 706 P.2d 251, 256 (Wyo.1985); *Ortega v. State,* 669 P.2d 935, 940 (Wyo.1983). Among the recognized exceptions are searches and/or seizures con-

---

1. The City, but not Mr. Hysong, submitted a   brief to this court.

ducted pursuant to voluntary consent[2] and conducted when necessary to render emergency aid to a person reasonably believed to be in distress and in need of assistance. *Ortega,* 669 P.2d at 941. Whether an exception exists in a particular case is a question of fact that may be properly resolved by a preponderance of the evidence standard in the light of all attendant circumstances. *Wilde,* 706 P.2d at 256; *Patterson v. State,* 691 P.2d 253, 258 (Wyo.1984), *cert. denied sub nom. Spoon v. Wyoming,* 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985); *Ortega,* 669 P.2d at 941; *Stamper v. State,* 662 P.2d 82, 86–87 (Wyo.1983); *Parkhurst v. State,* 628 P.2d 1369, 1378 (Wyo.), *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). On appellate review of the trial court's resolution of that question of fact, the appellate court must view the evidence in a light most favorable to the prevailing party in the trial court. *Wilde,* 706 P.2d at 256; *Stamper,* 662 P.2d at 86; *Parkhurst,* 628 P.2d at 1378; *Amin v. State,* 695 P.2d 1021, 1024–25 (Wyo.1985).

■ In applying the foregoing appellate principles and standards in the realm of search and seizure law, we focus our attention on the municipal court's findings of fact. These concern the existence and voluntariness of Mrs. Hysong's consent and the presence of exigent circumstances, that is, the need to render emergency aid to a child reasonably believed to be in distress and in need of assistance. "[A] consent to search is not testimonial and it is not evidence which can be described as being of a testimonial or communicative nature." *Stamper,* 662 P.2d at 87. From the totality of the circumstances, the municipal court had to determine whether voluntary consent was given. The officer testified that Mrs. Hysong answered "Okay" in response to his request to enter the home and inspect the child; Mrs. Hysong testified that she merely said, "See he's O.K." To that testimony the municipal court commented that "[o]ne might see that the officer could have construed that Mrs. Hysong gave him permission." Further, that court

stated it "could see there is a possibility that an officer in the heat could have considered [that she gave him permission]." Viewing the evidence in the light most favorable to the City, an appellate court must affirm a finding that Mrs. Hysong voluntarily gave consent to the officer to enter. *Pancratz Company, Inc. v. Kloefkorn–Ballard Construction Development, Inc.,* 720 P.2d 906, 908–09 (Wyo.1986). *See also Moorcroft State Bank v. Morel,* 701 P.2d 1159, 1160 (Wyo.1985) (quoting *Krist v. Aetna Cas. & Sur.,* 667 P.2d 665, 672 (Wyo.1983)).

■ Even with Mrs. Hysong's consent, however, the municipal court was faced with Mr. Hysong's refusal to consent. May one spouse's consent override the other's refusal to consent? In *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), the Court held that a warrantless search could be conducted when consent to search is given by "one who possesses common authority over premises and effects" and such consent is "valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock,* 415 U.S. at 170, 94 S.Ct. at 993, 39 L.Ed.2d at 249. In a 1976 case this court followed *Matlock* in upholding a warrantless search consented to by the defendant's wife. There the defendant's wife, in her husband's absence, consented to a search of a house jointly occupied by them. This court said:

> There is no question that Mrs. Williams had "common authority" with appellant over the premises and effects; there was mutual use of the house; both had joint control and access; she had the right to permit the inspection on her own right; appellant assumed the risk that she would permit the search.

*Williams v. State,* 557 P.2d 135, 141 (Wyo. 1976). Of course, the feature that distinguishes this case from *Matlock* and *Williams* is Mr. Hysong's presence and his refusal to consent to the officer's entry. Other courts faced with this question have failed to perceive any constitutional significance to this feature. *United States v.*

2. *Wilde,* 706 P.2d at 256; *Ortega,* 669 P.2d at 941.

*Hendrix,* 595 F.2d 883, 885 (D.C.Cir.1979); *United States v. Sumlin,* 567 F.2d 684, 687–88 (6th Cir.1977); *United States v. Sealey,* 630 F.Supp. 801, 809 (E.D.Cal. 1986); *State v. Frame,* 45 Or.App. 723, 609 P.2d 830, 833 (1980); *People v. Cosme,* 48 N.Y.2d 286, 422 N.Y.S.2d 652, 654–55, 397 N.E.2d 1319, 1321–23 (1979); *State v. Vaster,* 24 Wash.App. 405, 601 P.2d 1292, 1295 (1979); *contra, Silva v. State,* 344 So.2d 559 (Fla.1977). We align with these courts since we do not perceive a constitutional significance to the refusal to consent of a co-owner or occupant who is present.

Mr. Hysong's presence and refusal to consent to the officer's entry do not dilute his wife's consent. According to her trial testimony the residence belonged to her as well as to her husband. In our equality state we see no valid reason why her husband's refusal should cancel her consent. For the reasons stated in *Williams,* we hold that she had "common authority" to consent to the officer's entry in her own right and her husband's refusal did not cancel it.

■ Although the municipal court remarked about Mrs. Hysong's consent, it looked beyond that and found exigent circumstances to exist that justified the officer's warrantless entry. The municipal court was mindful, as this court is, that this state has a strong public policy of protecting children from child abuse.[3] W.S. 14–3–201 through 215 (July 1986 Repl.); W.S. 14–6–205(a)(iii). We note that one of the duties of a county D–PASS office is, within twenty-four hours after notification of a suspected case of child abuse, to initiate an investigation and verification of every report. W.S. 14–3–204(a)(iii). If a county D–PASS representative is denied reasonable access to a child by a parent and D–PASS determines the child's best interest requires access, then that office shall seek appropriate court order to see the child. In contrast, we find that a law enforcement officer without a warrant or court order may take a child into custody when that officer has "reasonable grounds to believe a child is * * * suffering from * * * injury or seriously endangered by his surroundings and immediate custody appears to be necessary for his protection * * *." W.S. 14–6–205(a)(iii).[4]

■ We have carefully read the record. Having heard all the testimony surrounding the report of suspected child abuse, the officer's investigation, the officer's concern for the safety of the child, and the officer's actions, the municipal court was entitled to reasonably conclude that exigent circumstances existed which justified the officer's warrantless entry into the Hysong residence. In the light most favorable to the City, the evidence was that the officer reasonably concluded that injury to the child had probably occurred in the nature of an injured arm and bruises on the buttocks. Within an hour of receiving the report, the officer had located the suspect's house in which the child was probably to be found; however, on checking the house, the officer found no one home. Periodically, the officer checked the house for signs of human activity; none appeared until 8:00 p.m. that Sunday night and, immediately, the officer visited the house to check on the child's condition. Clearly, within the short span of time from receiving the report until locating the child, the officer acted responsibly

3. Statistics over the past five years, furnished by the State of Wyoming Department of Family Services (D–FS), demonstrate a serious problem of child abuse and neglect. Using a new and more accurate reporting system in 1990, D–FS reported there were 1,157 victims being treated for various forms of "substantiated maltreatment." Discouraging public officials from pursuing good faith investigations of suspected child abuse in any of its forms is not consistent with a public policy of protecting children from abuse.

4. The Wisconsin Supreme Court upheld a warrantless entry into the suspected child abuser's home for the purpose of determining the safety and welfare of two children. After reviewing the totality of the circumstances, the court observed that the situation confronting the officer and social worker involved, as in this case, small children inside a home who are less able than adults to protect themselves from further harm or to seek independently medical attention. *State v. Boggess,* 115 Wis.2d 443, 340 N.W.2d 516, 524 (1983).

in his good faith efforts to investigate and verify the child's condition.[5]

Giving full and appropriate application to the well-recognized appellate principles and standards, this court must affirm the municipal court's finding that exigent circumstances existed when the officer entered the Hysong home to determine the safety and welfare of the small child. Additionally, we would hold that the warrantless entry was reasonable in light of Mrs. Hysong's consent to the officer's entry. We hold, therefore, that the entry was reasonable and lawful. The district court erred by considering the case de novo instead of applying the appropriate appellate standard of review. Its decision must be, and is, reversed, and the municipal court's judgment of conviction is reinstated.

5. *Boggess,* 340 N.W.2d at 524.