Robert LEE, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–182.

Supreme Court of Wyoming.

April 3, 2000.

Representing Appellant: John D. Fadala, Casper, Wyoming.

Representing Appellee: Gay Woodhouse, Acting Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, Cheyenne, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

The primary issue asserted by Robert Lee (Lee) in this appeal is that the district court committed reversible error by not suppressing evidence obtained in a search conducted pursuant to a warrant. Lee's justification for suppression is that the State could not tell him where to find the person who furnished the information relied upon to obtain the warrant. In addition, Lee asserts error in admitting a prior conviction into evidence for purposes of impeachment upon cross-examination. Lee argues that the conviction antedated the time limit found in W.R.E. 609. He also asserts error in not applying the best evidence rule to require the State to produce a recording of his interview by officers in Arizona. As a final matter, Lee objects to the award of the expenses of his presentence confinement to the county. We are satisfied that no error occurred in connection with Lee's prosecution, other than the award of the expenses of presentence confinement. The Judgment and Sentence entered in the district court is affirmed except for the award of the expenses of presentence confinement. The case is remanded to the district court for the purpose of amending the Judgment and Sentence to delete that aspect of the award of restitution.

This statement of the issues is found in the Brief of Appellant:

### I.

Did the trial judge abuse his discretion when he failed to suppress the evidence obtained through execution of the search warrant, where neither the informant nor his location were provided by the prosecution, and where the officer did not verify the information provided by the informant?

### II.

Did the trial judge abuse his discretion by allowing into evidence the Defendant's prior conviction, which was more than ten years old?

### III.

Was the best evidence rule violated in this case?

### IV.

Did the trial judge err in assessing incarceration costs by requiring the Defendant to pay $11,139.00?

This Statement of the Issues is found in the Brief of Appellee:

I. Did the district court properly deny appellant's motion to suppress the evidence seized by law enforcement during a search of his residence pursuant to a warrant?

II. Was it prejudicial error for the district court to allow the State to cross-examine appellant about his prior conviction?

III. Was the "best evidence rule" violated in this case?

IV. Did the district court err in ordering appellant to pay $11,139.00 in restitution to the Natrona County Detention Center for incarceration costs?

In October of 1996, detention personnel at the Natrona County Detention Center contacted a special agent with the Wyoming Division of Criminal Investigation. The de-

tention personnel reported that an individual who was being held in detention for property destruction had requested to speak with a law enforcement officer. The special agent interviewed the informant and the special agent was told that Lee possessed firearms and was involved in illegal drug activities. The informant told the special agent about his involvement with Lee in drug deliveries in June of 1996 in Reno Nevada; in July of 1996 in Wendover, Utah; in September of 1996 in Reno, Nevada; and in October of 1996 in Casper. The informant provided information specifically identifying hotels, vehicles, physical descriptions of other individuals involved, locations of the drugs, and descriptions of the packages containing the drugs.

In connection with the transaction in Casper, the informant told the special agent of a conversation between Lee and another drug trafficker that detailed Lee's next transaction. The informant was more fluent in Spanish than in English, but he said he believed Lee was suspicious of his relationship with the police and was discussing this with the other drug trafficker. After that conversation, Lee had gone to his bedroom and returned with a bag containing three firearms, a .22 caliber Derringer and two silver semi-automatic .45 caliber pistols. Lee kept one of the .45 caliber pistols, put the other two weapons away, and told the informant to go to sleep. The informant believed that Lee would kill him if he slept, and he stayed awake through the night, leaving the house the following morning. He called the police for assistance and they ultimately took him to the Rescue Mission. The special agent quoted the information furnished by the informant in an affidavit prepared to obtain a search warrant. On October 11, 1996, the special agent showed the informant a photograph of the house that Lee owned and occupied. The informant told the special agent that he had stayed at that house on the evening of October 2, 1996. The special agent interviewed the officer who had taken the informant to the Rescue Mission, and the officer stated that the informant was very excited and appeared to be frightened. Three days later, the informant positively identified Lee from a recent picture of Lee that the special agent showed him. In investigating Lee's background, the special agent learned that Lee had been convicted of robbery and conspiracy to commit robbery in May of 1982.

Based upon all of this information which was included in his affidavit, the special agent obtained a search warrant for Lee's residence. When the search warrant was executed, drug paraphernalia, methamphetamine and marijuana, and assorted ammunition located at various places throughout the house were seized. Lee was charged with two counts of felony possession of a controlled substance and two counts of possession of a controlled substance with the intent to deliver, all in violation of Wyo. Stat. Ann. § 35–7–1031 (Michie 1997). Lee was arrested on March 12, 1997 in Phoenix, Arizona, and two law enforcement agents from Wyoming, together with law enforcement personnel from Arizona, interviewed Lee. Although Lee was the sole owner and occupant of the residence, he denied knowledge of the illegal drugs and the other items found there. He also told the officers, "[m]y dealings in drugs aren't half of what people think they are." Lee's vehicle was searched in Arizona, and fifteen additional pounds of methamphetamine were seized. Lee's testimony at trial was different from his previous admissions. At trial, he denied knowledge of the drugs found at his Casper residence, and he also denied statements he had made to the agents concerning his drug dealings. Lee testified that the residence was occupied by another person who also owned the drugs and paraphernalia found by the police. He stated that the ammunition was part of a collection, and the scales that were found were used in his dart making activities. Lee filed several motions, including two motions to suppress, prior to his trial. The first motion to suppress was directed at evidence obtained during the search of his residence on October 14, 1996, and the second motion to suppress was directed at his statements to the agents because he asserted he did not knowingly and intelligently waive his right to silence. The district court held a hearing on the motions to suppress on November 7, 1997, and after hearing the testimony presented, the district court denied both motions. Lee was tried

beginning on November 17, 1997, and the jury returned verdicts of guilty on all four counts with which Lee had been charged. Lee subsequently was sentenced to ninety to one hundred and twenty months on Count II of the Information which was imposed to run concurrently with a sentence of not less than thirty months nor more than sixty months on Count I of the Information. Those sentences were imposed to run consecutively to a sentence of not less than seventy-two months nor more than one hundred and twenty months on Count IV which was imposed to run concurrently with the sentence of not less than thirty months nor more than sixty months on Count III. Credit for pretrial confinement was granted with respect to Counts I and II, and the district court ordered a payment of $50.00 to the Victim's Compensation Fund and required Lee to pay $11,139.00 for restitution to the Natrona County Detention Center. Lee appeals from the Judgment and Sentence.

The focus of Lee's attack upon the order denying his motion to suppress the evidence obtained when the search warrant was executed is that he was denied the opportunity to verify the information upon which the law enforcement officers relied. Abuse of discretion is the standard by which we review an order denying a motion to suppress. *Hall v. State*, 911 P.2d 1364, 1367 (Wyo.1996). We have settled upon this definition of judicial discretion:

> "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985)."

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). The trial court is the fact finder with respect to a motion to suppress, and deference is afforded to the opportunity of the trial court to assess the credibility of witnesses, weigh the evidence, and make necessary inferences, deductions, and conclusions. *Hall*, 911 P.2d at 1367 (*citing United States v. Werking*, 915 F.2d 1404, 1406 (10th

Cir.1990)). The evidence at the suppression hearing is to be viewed in the light most favorable to the trial court and the factual rulings will not be disturbed unless they prove to be clearly erroneous. *Hall*, 911 P.2d at 1367.

As the moving party, the burden is assigned to Lee of establishing by a preponderance of the evidence that his rights were violated by the search. *Guerra v. State*, 897 P.2d 447, 452 (Wyo.1995). We defer to the findings of fact made by the trial court with respect to meeting that burden. *Hall*, 911 P.2d at 1367. Our review of the order of the district court denying the motion to suppress is accomplished by applying the abuse of discretion and clearly erroneous standards.

Lee contends that the information recited in the affidavit for the search warrant never was corroborated and the informant was not available at the suppression hearing or trial. He further asserts that the State never told him where the informant could be found so that he could test the information. We conclude that Lee's argument simply begs the question which really is to test what was available and utilized at the time the warrant to search was issued. Considering the information available to the officers at the time the affidavit was considered in connection with the issuance of the warrant, probable cause was present to issue that warrant.

A search warrant can be issued by a magistrate only upon a showing of probable cause, and the judicial officer must be possessed of "sufficient information to make an independent judgment that probable cause exists for the warrant." *Bonsness v. State*, 672 P.2d 1291, 1292–93 (Wyo.1983). In order to satisfy the requirement for probable cause, "the facts and circumstances within the peace officer's knowledge and of which he had reasonably trustworthy information [must be] sufficient to warrant a reasonably cautious or prudent man to believe that the person arrested has committed an offense." *Ostrowski v. State*, 665 P.2d 471, 476 (Wyo. 1983) (*quoting Neilson v. State*, 599 P.2d 1326, 1333 (Wyo.1979)). The experience and expertise of the arresting officer are factors that can be considered. *Jandro v. State*, 781 P.2d 512, 518 (Wyo.1989). Once the magis-

trate concludes that probable cause exists and the warrant is issued, deference is afforded to that determination. *Bonsness*, 672 P.2d at 1292.

■■■■ The affidavit presented to support the issuance of a search warrant is presumed to be valid. *Davis v. State*, 859 P.2d 89, 94 (Wyo.1993). It is the affidavit that articulates the facts to supply probable cause, and it must include more than bare conclusions from the affiant. It must demonstrate corroboration of information from a confidential informant and contain verifiable facts. *Bland v. State*, 803 P.2d 856, 859–60 (Wyo. 1990); *Bonsness*, 672 P.2d at 1292–93. Affidavits for search warrants are tested by a less vigorous standard than the standards which govern the admissibility of evidence at trial, *Davis*, 859 P.2d at 94, but the facts and circumstances set forth "must amount to more than mere suspicion, but they need not rise to the level of proof of guilt, nor even to the level of prima facie evidence of guilt." *Jandro*, 781 P.2d at 518.

■■■■ The test we have adopted for determining whether sufficient information is set forth to issue a warrant is whether a "reasonably cautious or prudent [person would] believe that a crime was being committed or that one had been committed." *Bland*, 803 P.2d at 859. Application of this test demands an examination of the totality of the circumstances. *See Bonsness*, 672 P.2d at 1292–93. In this case, the special agent who applied for the search warrant had five and one-half years of experience and training, of which fifteen months had been devoted to investigating controlled substance violations. He had received special training from the Wyoming Division of Criminal Investigation, the Natrona County Sheriff's Department, the Internal Revenue Service, and the Wyoming Law Enforcement Academy. Considering the special agent's experience, together with an examination of the totality of the circumstances reported in the affidavit, satisfies us that probable cause to issue the search warrant to search Lee's residence was present. In summary, the affidavit combined information from the informant that in June of 1996, the informant and another trafficker drove to Reno, Nevada, and met Lee at the

Circus Circus Hotel. After meeting with Lee, the other trafficker had acquired a large amount of cash. The assumption of the informant was that this occurred because of Lee's involvement in a drug transaction. The informant also reported that in July of 1996, he was involved in another transaction in Wendover, Utah, with Lee and the same trafficker from Reno. The trafficker told the informant that the purpose of the trip was to complete a drug transaction with Lee, and that individual showed the informant a suitcase filled with methamphetamine. After leaving the informant and meeting privately with Lee, the trafficker returned with a large amount of cash.

In addition, the informant had told the special agent that in September of 1996, the informant and the other trafficker, along with two other dealers, met with Lee again in Reno, Nevada. The purpose was to deliver a large quantity of methamphetamine which the informant explained was wrapped in individual softball size packages and placed into two twelve-pack containers of Bud Light. The informant said that he had seen the methamphetamine himself and that Lee flew home taking the drugs on the plane with him. The informant then reported that on October 2, 1996, the informant and the other trafficker went to Lee's residence in Casper. The trafficker and Lee began drinking and they were discussing Lee's next transaction. Lee appeared to become suspicious of the informant's relationship with the police, and he left the room returning with a black bag of guns. Lee kept one gun out, but the informant provided specific information as to the three guns that Lee displayed. The informant also had identified Lee's residence as the place where the informant stayed on October 2, 1996, and he positively identified Lee from a photograph the special agent presented some twelve days later. The affidavit reported that the officer who took the informant to the Rescue Mission confirmed the informant's excited and frightened appearance when he was picked up in the morning after a sleepless night at Lee's residence.

■■■■ The courts must also be satisfied that the information used to determine the

presence of probable cause is reasonably trustworthy. In addition to the "reasonably cautious or prudent man standard" that we confirmed in *Bland,* 803 P.2d at 859, other cases focus on the credibility of the informant. In this instance, the informant's statement that he had purchased marijuana from a drug dealer was a statement against his interest. In addition to that sort of admission adding to his credibility, it also demonstrated the informant's "firsthand knowledge of criminal activity." *Bonsness,* 672 P.2d at 1293. Quoting from *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2330, 76 L.Ed.2d 527 (1983), we noted that "the court pointed out that even if there is some doubt as to the informant's motives, his detailed description of criminal activity along with his statement that the event was observed firsthand, entitles his 'tip' to carry greater weight than it might otherwise." *Bonsness,* 672 P.2d at 1293. We are satisfied that these factors sufficiently enhanced the credibility of the statements made by the informant.

The informant's description and involvement in different transactions with Lee also supports his credibility. The informant's firsthand knowledge and actual participation in numerous drug transactions with Lee further bolsters the informant's credibility, and "carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *Bonsness,* 672 P.2d at 1293 (*citing United States v. Harris,* 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971)). The special agent conducted further investigation which disclosed a "Criminal Disposition Report" from the Division of Criminal Investigation of the Attorney General's Office. That report reflected an arrest for Lee on January 16, 1982 for robbery and conspiracy to commit robbery in Laramie County. Lee was convicted, and on May 7, 1982, he was sentenced to five to fourteen years in prison. The law prohibits Lee as a convicted felon from possessing firearms. When the special agent was informed of Lee's ownership of weapons, further support was presented to the magistrate to justify the issuance of a warrant allowing the officers to search not only for controlled substances but also for firearms.

As indicated, Lee's primary argument relative to the search warrant is his assertion that the State was obliged to tell him where the informant could be located and it failed to do so. Lee asserts that because of the circumstances, he was denied his opportunity to confront and cross-examine the witness against him at both the suppression hearing and the trial. We emphasize that it is the information available at the time the warrant was issued that is material to the question of probable cause. The State does not have any responsibility to maintain a witness who provided the information available for the defendant. It appears that Lee has in some respect confused the issue of witness availability with cases which address the duty of the prosecution to preserve evidence. In *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), the Supreme Court of the United States held that the State is required to preserve evidence. That requirement is "limited to evidence which can be expected to play a significant role in the defendant's defense * * * and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Wilde v. State,* 706 P.2d 251, 255 (Wyo.1985) (*citing California v. Trombetta,* 467 U.S. 479, 488, 104 S.Ct. 2528, 2529–30, 81 L.Ed.2d 413 (1984)). The requirement does not obligate the prosecution "to produce *all* witnesses conjecturally available to provide relevant testimony. The prosecution has no defined duty to try the case for the defendant, and consequently it is not an assumed responsibility to provide the defendant's evidence." *Young v. State,* 849 P.2d 754, 764–65 (Wyo.1993) (*quoting Miller v. State,* 830 P.2d 419, 426 (Wyo.1992)) (emphasis in original). The State did not purposely withhold information about the informant's identify from Lee, and it did not refuse to furnish his location; it did not know the informant's address. Lee knew who the informant was, and he openly admitted that the best evidence of the informant's statement to police would be to question the informant in open court. Not only is Lee's argument not supported by the law, but he failed to assert this objection at trial and he is not permitted to raise on appeal the objection to the failure of

the State to produce the informant having not done so at trial. *See Montez v. State*, 670 P.2d 694, 699 (Wyo.1983).

The specific information the informant supplied furnished a sound and substantial basis for the issuing magistrate to conclude that probable cause existed that Lee was dealing in controlled substances and possessed firearms at the Casper residence which was the object of the search warrant. It is true the special agent did not verify every piece of information the informant supplied, but he is not required to go to those lengths. In light of the specific details furnished by the informant, the informant's firsthand knowledge, the informant's statement against his penal interests, and the verification that the special agent did accomplish, we hold that the magistrate had ample probable cause to issue the warrant.

 We next turn to Lee's assertion that error occurred when the prosecuting attorney was permitted to cross-examine him about his prior conviction. Generally, the ruling of the trial court on the admissibility of evidence is discretionary, but whether a specific rule applies to a given set of facts is a question of law, requiring a *de novo* review. *Bila v. Accurate Telecom*, 964 P.2d 1270, 1273 (Wyo.1998). If the decision of the trial court is in accordance with the correct rule, we affirm. If it is not in accordance with the law, we correct it. *May v. May*, 945 P.2d 1189, 1191 (Wyo.1997).

 Lee testified in his own defense at the trial, and was therefore subject to cross-examination with respect to prior felonies. *Montez*, 670 P.2d at 696. Although the house which was the subject of the search was owned by Lee, he insisted that he lived elsewhere and he testified that the drugs in question belonged to a third party. Lee testified that a good friend of his currently occupied the house and that the drugs belonged to the friend. The following exchange occurred during cross-examination:

Prosecutor: Is [X] a good friend of yours?

Lee: I've known him.

Prosecutor: Where did you meet him?

Lee: In Rawlins in 1982.

Prosecutor: When you were in the penitentiary for bank robbery?

Lee: Yes.

Lee lodged an objection, contending that evidence of his prior conviction, even when used for impeachment, was not admissible because the conviction was more than ten years old, and the State had failed to properly notify him of its intent to use the conviction. Prior convictions of an accused may be introduced at trial if the date of release from the confinement imposed for that conviction occurred within ten years. W.R.E. 609(b). In addition, the district court, in the interests of justice, may admit convictions falling outside the ten-year period if the "probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." W.R.E. 609(b). To invoke the exception, however, the State must provide the defendant with written notice in advance of its intent to use such evidence, and if it fails to provide such notice, the prior conviction is inadmissible. W.R.E. 609(b).

The record discloses that on May 7, 1982, Lee was incarcerated for robbery and conspiracy to commit robbery, and he was paroled on February 18, 1987. The record does not demonstrate any violation of his parole, and he completed his parole on September 8, 1992. The special agent investigating this offense prepared an affidavit on March 11, 1997 to accompany the Information charging Lee with four counts of violation of Wyo. Stat. Ann. § 35–7–1031. The Information was filed on March 11, 1997, and Lee was arrested on March 23, 1997 in Phoenix, Arizona.

The threshold question is whether Lee's prior conviction fits the parameters of W.R.E. 609(b). That depends on a determination as to whether he was released from confinement within the ten-year period. In the district court, the State successfully argued that confinement extended to any period of parole which brought the case within the ten-year period. The State's argument is that parole is constructive confinement, and if violated and revoked, the defendant would be required to complete the sentence. The conclusion the State draws is that Lee was not released from confinement until he was

discharged from parole, and that date occurred within the ten-year period, excusing the State from providing notice.

Historically, the federal rule, the source of the Wyoming rule,[1] used the expiration of the period of parole, probation, or sentence to calculate the ten-year period. *United States v. Daniel,* 957 F.2d 162, 168 (5th Cir.1992). In 1972, F.R.E. 609(b) was amended and then specified that the calculation should begin with the release from confinement. *See State v. Dunlap,* 187 Ariz. 441, 930 P.2d 518, 538 (1996), *cert. denied,* 520 U.S. 1275, 117 S.Ct. 2456, 138 L.Ed.2d 214 (1997). The exception to the application of that rule occurs only when there has been reconfinement for parole violations. *United States v. Gray,* 852 F.2d 136, 139 (4th Cir.1988); 3 Mueller & Kirkpatrick, *Federal Evidence,* § 284 at 298 n.4 (2d ed.1994). Lee did not have any parole violations that would invoke the exception, and the date of his release for application of W.R.E. 609(b) is February 18, 1987. This conclusion is supported by the proposition that a parolee cannot technically escape from parole, and for that reason, parole does not qualify as confinement or "official detention." Wyo. Stat. Ann. § 6–5–201(a)(ii) (Lexis 1999); *Westmark v. State,* 864 P.2d 1031, 1034 (Wyo.1993); *Peper v. State,* 768 P.2d 26, 28–29 (Wyo.1989).

In *United States v. Jefferson,* 925 F.2d 1242, 1256 n. 16 (10th Cir.), *cert. denied,* 502 U.S. 884, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991), the United States Court of Appeals for the Tenth Circuit offered three different theories as to when the ten-year limitation period began. The three possibilities were the date of arrest, the date the accused testified, and the date the information was filed. The court did not decide the issue in that case, but allowed the prior conviction in as evidence, reasoning that the prior crime, although slightly past the ten-year period, affected the defendant's credibility. *Id.* at 1256. The discussion in *Jefferson* related to a motion in limine, and the requirement of notice was not an issue in that case.

Assuming, *arguendo,* that we follow the guidance of *Jefferson,* the earliest date, the filing of the Information, was March 11, 1997, and therefore the prior conviction was beyond the ten-year period. Pursuant to W.R.E. 609, the State was required to give Lee notice of the intent to produce the prior robbery conviction even if it was only to be used for impeachment purposes. There is no indication in this record that the State provided the requisite notice.

■ Nevertheless, we conclude that any error in the admission of Lee's prior conviction was harmless error based upon an examination of all of the circumstances. *See Roderick v. State,* 858 P.2d 538, 550 (Wyo.1993) (for an error to be regarded as harmful, there must be a reasonable possibility that in the absence of the error, the verdict might have been more favorable to the defendant). The abundance of the evidence produced by the search of Lee's residence leads to the ineluctable conclusion that there is no reasonable possibility that the verdict would have been different had the evidence of the prior conviction been excluded. By injecting his friend into his defense, Lee opened the door to the possibility of dialogue concerning the length and nature of their relationship. The information was articulated on cross-examination prior to any objection. In light of the overwhelming evidence demonstrating Lee's active involvement in illegal drug activities involving both methamphetamine and marijuana as well as his violation of Wyo. Stat. Ann. § 6–8–102 (Lexis 1999), prohibiting possession of a firearm by anyone previously convicted of a violent felony, we hold that the admission of the prior conviction was, at best, harmless error.

Lee then argues that in the absence of a tape recording of his statements to law enforcement agents in Arizona, the best evidence rule set forth in W.R.E. 1002 was violated. The essence of Lee's position is that the State was required to make a recording of this statement, which then should have been provided to him during discovery

---

**1.** According to the committee note following the Table of Contents for the Wyoming Rules of Evidence, "except as indicated in a 'Committee note' following a rule or subdivision thereof, the Wyoming Rules of Evidence are the federal rules verbatim."

and used at trial in lieu of the testimony of the agents.

■■■■■ Due to Lee's failure to raise these issues or object at trial, they are reviewed under our plain error standard:

First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*Doyle v. State,* 954 P.2d 969, 974 (Wyo.1998). There is no requirement in the law of Wyoming that interviews and interrogations be electronically recorded. *State v. Evans,* 944 P.2d 1120, 1128 (Wyo.1997). In any event, we consistently have ruled that we do not consider issues when there is a failure to "provide any cogent argument or pertinent authority in support of these arguments * * * and raising them for the first time [on] appeal[.]" *Collier v. State,* 920 P.2d 265, 267 (Wyo.1996). Consequently, we do not address the merits of Lee's contention that there was a violation of the "best evidence rule" by the district court.

■■■■■ Finally, we turn to the requirement in the Judgment and Sentence that Lee make restitution for the costs of his incarceration. In this regard, the district court erred, and the State concedes as much. Lee's assertion that the district court lacked authority to assess the cost of incarceration at the Natrona County Detention Center under Wyo. Stat. Ann. § 7–13–109 (Lexis 1999) or Wyo. Stat. Ann. §§ 7–9–101 and 7–9–102 (Lexis 1999) is correct. The reach of Wyo. Stat. Ann. § 7–13–109, which provides for payment of jail costs by an inmate, is limited to those instances in which "the sentencing court may require a person sentenced to confinement in *county* jail, for any offense, to pay the jail facility the costs of room and board for each day of incarceration * * *." (Emphasis added.) The district court did not sentence Lee to confinement in the county jail, but rather to confinement in the Wyoming State Penitentiary. The statute does not permit the imposition of costs of confinement in such an instance. The statutes that address victim restitution do not assist the State in this regard because there is no mention in those statutes of the county jail as a victim. Wyo. Stat. Ann. §§ 7–9–101 and 7–9–102. A "trial court has no inherent power to order restitution; it must rely on statutory authority." *Kahlsdorf v. State,* 823 P.2d 1184, 1191 (Wyo.1991); *Barnes v. State,* 670 P.2d 302, 303–04 (Wyo.1983). At the State concedes, the district court had no statutory authority that would justify this imposition of restitution for the costs of incarceration, and we reverse that aspect of the Judgment and Sentence.

Other than the imposition of restitution for the costs of incarceration, the Judgment and Sentence is affirmed in all respects.