**Steven Ralph SYBERT,
Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 85–273.**

Supreme Court of Wyoming.

Sept. 2, 1986.

Leonard Munker, State Public Defender, Julie Naylor, Appellate Counsel, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, and Edward G. Luhm, Student Intern (argued), for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Terry L. Armitage, Legal Intern (argued), and Margery Boyd Cozzens, Student Intern, for appellee (plaintiff).

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

CARDINE, Justice.

Appellant Steven Sybert was convicted of first degree arson in violation of § 6–3–101, W.S.1977.[1] He raises three issues on appeal, all of which involve limiting instructions relating to prior inconsistent statements of a witness. We must decide: (1) whether appellant made a timely objection to an allegedly inadequate limiting instruction which the court gave at trial; (2) whether appellant made a sufficient request for a second limiting instruction which the court refused to give; and, (3) assuming that appellant's request for the second instruction was insufficient, whether the court committed plain error by failing to give the instruction on its own motion.

We affirm.

## FACTS

On the morning of July 5, 1985, a mobile home leased by appellant's girlfriend, Pat-

---

1. Section 6–3–101(a), W.S.1977, states:
"A person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure."

sy Cole, was destroyed by fire. Ms. Cole's two small children and her niece, Candy Matskus, also lived in the trailer.

The evening before the fire, appellant and Ms. Cole had an argument during which he knocked over a table and threatened to report her for welfare fraud. After appellant left, Ms. Cole went to the sheriff's department where she told Officer Danny Anderson that appellant had threatened to burn her trailer. She requested that patrolling officers watch her trailer to keep appellant away. She then returned home and was joined by Candy Matskus.

Appellant returned to the trailer about 2:00 a.m. and spoke to Ms. Matskus who told him that Ms. Cole was taking a walk. In reality, Ms. Cole was hiding in the bathroom. Appellant concluded that Ms. Cole was out with her ex-boyfriend, John, and he slapped Ms. Matskus in anger saying, "this is what is going to happen to John." When appellant left, Ms. Cole and Ms. Matskus took the children to a neighbor's trailer where all four spent the rest of the night.

At about 5:40 a.m., Peter Galloway, one of Ms. Cole's neighbors, heard a car start up, looked out his window, and saw appellant back his car out of Ms. Cole's driveway and drive off. Five minutes later, Mr. Galloway saw smoke and flames coming from the trailer. He ran to the landlord's house, reported the fire, and returned to Ms. Cole's trailer with an extinguisher. Firemen arrived about fifteen minutes later and put out the fire, but not before the trailer was totally destroyed.

The deputy sheriff dispatched to the fire, Robert Jones, spoke with Ms. Cole at the scene. She told him that appellant had threatened to burn the trailer down during their argument the previous evening. She also gave a description of appellant and his vehicle which enabled the police to stop him within an hour after the fire was reported. In his car were two nearly empty cans of automobile starting fluid and a can of carburetor cleaner. He smelled of petroleum products, and there were two small burn marks on his shirt and a black substance on his hands.

About two hours after the fire, Ms. Cole gave the police a written statement which elaborated on the report she gave Deputy Jones at the fire. According to the statement, the argument leading to appellant's arson threat was quite violent. Ms. Cole was so afraid of appellant when he returned at 2:00 a.m. that she took a sledgehammer with her when she hid in the bathroom. She later saw him around her trailer every fifteen or twenty minutes between 2:00 a.m. and 6:00 a.m., and just before the fire she saw him near the trailer, heard a bang, and saw smoke.

Appellant was charged with first degree arson, pled not guilty, and went to trial on September 9, 1985. At trial Ms. Cole admitted that there had been an argument the night before the fire but contradicted the most incriminating parts of her prior statements. She testified that the night before the fire she had lied to Officer Anderson about appellant's arson threats, that she had repeated the lie to Deputy Jones on the morning of the fire, and that she had repeated it again in her written statement. She said she lied because she was very angry and "just wanted to see Steve put away." She admitted that between appellant's arrest and the trial she had learned that she was pregnant with his child. She also admitted that she loved him.

To impeach Ms. Cole's exculpatory testimony, the prosecution offered into evidence a copy of her written statement. Defense counsel did not object, but asked for "a limiting instruction directing the jury that it could be considered to reflect on the credibility of this witness." The court responded by giving the following instruction:

"This will be received as Exhibit 1-A. It is the prior statement received by the Court in this matter and may be considered as evidence of prior statements made by this witness that are inconsistent with her testimony today."

Defense counsel made no objection to the form or substance of this instruction after it was given.

In addition to Ms. Cole's written statement, the prosecution offered the oral statement which Ms. Cole gave to Deputy Jones at the scene of the fire. At a bench conference, defense counsel objected to Deputy Jones's repetition of this out-of-court statement on grounds that it was hearsay which could only be used to impeach Ms. Cole. The prosecution countered that the statement was admissible for both substantive and impeachment purposes because it was an excited utterance under Rule 803(2), W.R.E. The court did not accept the excited utterance argument but observed:

"I think a prior inconsistent statement may be received both as something that contradicts or shows a willingness to speak untruths on a part of a party, but the prior statement can also be received to establish the truth of the facts alleged therein, or stated therein in their statements, so I think there's two basic instructions to the jury that would be to that effect."

Defense counsel replied:

"We just want to make clear that we do object to that ruling, and it's our contention that under the hearsay rule that this may be admissible to establish that she's not a credible witness, her unreliability, but it cannot be used."

The trial judge then said, "I disagree, I think it can be used in substantive fashion." Defense counsel made no further objection, did not specifically request a limiting instruction, and did not suggest any wording for a limiting instruction. The direct examination of Deputy Jones continued, and he recounted Ms. Cole's prior inconsistent statement.

The inconsistent-statement issue was raised one more time before Deputy Jones completed his testimony. On redirect examination, defense counsel interrupted Jones as he began to repeat Ms. Cole's explanation of how she hid in the bathroom. The judge invited the lawyers to the bench so that he could explain why he was allowing the statement for substantive as well as impeachment purposes. After the court made it clear that it was not relying on the excited-utterance exception to the hearsay rule, defense counsel stated:

"I don't know that we have particularly any objection to keep all of this out, but I do think that perhaps at the instruction conference we maybe need to rediscuss what we may need for substantive purposes or credibility."

The trial judge responded, "I've already drafted an instruction that covers that area."

At the close of trial, over the prosecution's objection, the court instructed the jury as follows:

"Evidence that at some other time a witness has said or done something which is inconsistent with the witness' testimony at the trial, may be considered by the jury for the sole purpose of judging the credibility of the witness, but may never be considered as evidence or proof of the truth of any such statement."

The jury found appellant guilty of second degree arson, and he was sentenced to a term of five to eleven years in the Wyoming State Penitentiary.

## OBJECTION TO THE FIRST LIMITING INSTRUCTION

■ Appellant contends that the limiting instruction the court gave in connection with Ms. Cole's written statement was inadequate. We need not decide whether the instruction was inadequate, for counsel did not object to it after it was given.

■ When counsel makes a request for a valid jury instruction either in the midst of trial or just prior to deliberations, it is error for the court to refuse it. *Channel v. State*, Wyo., 592 P.2d 1145, 1150 (1979). If, however, the court responds to the request by giving an instruction which is claimed to be inadequate, counsel must still object to preserve any error for appellate review. *Otte v. State*, Wyo., 563 P.2d 1361 (1977); *Oldham v. State*, Wyo., 534 P.2d

107 (1975). We have consistently applied this rule to instructions given to the jury at the close of evidence when it retires to deliberate. *Cutbirth v. State,* Wyo., 663 P.2d 888 (1983); Rule 31, W.R.Cr.P.; Rule 51, W.R.C.P. The rule applies in the same manner to instructions given during the course of trial. The rationale is the same in both instances, "to inform the trial judge of possible errors so he may have an opportunity to correct them." *Haley v. Dreesen,* Wyo., 532 P.2d 399, 402 (1975).

The defense did not object to the instruction given by the court. The alleged error was not preserved as an issue on appeal.

## THE COURT'S FAILURE TO GIVE THE SECOND INSTRUCTION

■ Appellant contends that a limiting instruction was requested at the first bench conference during the direct examination of Deputy Jones. But, at that conference, defense counsel did not request a "limiting instruction" and did not offer a proposed instruction either orally or in writing. Instead, defense counsel stated:

"We just want to make clear that we do object to that ruling, and it's our contention that under the hearsay rule that this may be admissible to establish that she's not a credible witness, her unreliability, but it cannot be used."

■ This objection simply does not qualify as a request for an instruction. An objection under Rule 103, W.R.E., is the means by which a party preserves error in the admission of evidence which is not admissible for any purpose. But when evidence is admissible for some purposes, a limiting instruction under Rule 105, W.R.E., is the method of telling the jury to accept the evidence for the proper purposes and reject the evidence for the forbidden purposes. Even if an objection is made, a limiting instruction must be requested if desired. *Dincau v. Tamayose,* 131 Cal. App.3d 780, 182 Cal.Rptr. 855 (1982); *State v. Hunt,* 72 N.C.App. 59, 323 S.E.2d 490 (1984).

As a matter of trial strategy, counsel may decide against a limiting instruction to avoid emphasizing unfavorable testimony. This consideration is discussed in 1 D. Louisell & C. Mueller, Federal Evidence § 45, at 342–343 (1977):

"There are sound reasons for requiring the opponent to request the trial judge to limit the scope of the evidence by instructing the jury. * * * [T]his manner of proceeding appropriately leaves to the opposing trial counsel the option of concluding that, as a matter of strategy, he is better off without an instruction than with one, in that an instruction would serve only to remind the jury of what it has heard or to re-emphasize the evidence in the minds of the jurors, and perhaps to suggest to the jury a use for the evidence which is best left unmentioned."

It is not the function of the trial judge to second-guess the strategy of counsel. In *Connolly v. State,* Wyo., 610 P.2d 1008, 1011 (1980), we said:

"To charge the trial court with the duty of protecting defendant's right to receive a limiting instruction, thereby relieving the attorney of that obligation, would be an exercise of role-switching which we are not ready to condone * * *."

In the case at bar, it is clear that defense counsel knew how to make an explicit request for an immediate limiting instruction because such a request had been made when Ms. Cole's written statement was admitted into evidence. It is possible that counsel made a conscious decision during the direct examination of Deputy Jones to wait until the end of trial for the instruction. This strategy is consistent with the following statement made by defense counsel at the bench conference held during Deputy Jones' redirect testimony:

"I don't know that we have particularly any objection to keep all of this out, but I do think that perhaps at the instruction conference we maybe need to rediscuss what we may need for substantive purposes or credibility."

The court did not err in failing to give a limiting instruction in connection with Dep-

uty Jones's hearsay testimony where none was requested. *Grabill v. State*, Wyo., 621 P.2d 802, 813 (1980).

## PLAIN ERROR

Appellant maintains that the trial court committed plain error in not giving limiting instructions on its own motion. In Connolly v. State, supra, 610 P.2d at 1011, we considered this precise question and held that a trial court must give a limiting instruction only upon request. See also Rule 105, W.R.E.

The court gave a limiting instruction on both occasions that one was requested, i.e., at the introduction of Patsy Cole's written statement and at the close of trial. The court's failure to give an instruction at any other time was not error at all, much less plain error.

Affirmed.