Everett PHILLIPS, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 90–112.

Supreme Court of Wyoming.

June 11, 1992.

Rehearing Denied July 8, 1992.

Mike Cornia, Asst. Public Defender, argued for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Hackl, Deputy Atty. Gen., Karen A. Byrne, and Hugh Kenny, argued, Sr. Asst. Attys. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Everett Phillips challenges his convictions for conspiracy to commit kidnapping and conspiracy to commit sexual assault. His convictions for kidnapping and sexual assault which were the objective of the conspiracies were reversed due to a speedy trial violation. *Phillips v. State*, 774 P.2d 118 (Wyo.1989) (*Phillips I*). The issues Phillips presents in this appeal concern double jeopardy and speedy trial questions as well as issues pertaining to the conduct of the trial.

We affirm.

Phillips brings the following issues:

ISSUE 1

The Fifth Amendment's protection against double jeopardy is violated when a person who has been convicted of a substantive crime and acquitted of attempt to commit the substantive crime is later prosecuted for conspiracy to commit that same crime.

ISSUE 2

Defendant has been denied his right to speedy trial provided for by the United States and Wyoming Constitutions and this denial warrants dismissal of the charges against him.

ISSUE 3

The preindictment delay was unreasonable and prejudiced the petitioner.

ISSUE 4

The decision to prosecute the petitioner on the conspiracy charge was based entirely on this court's dismissal of the original charges and therefore constitutes vindictive prosecution which denied the petitioner his right to due process.

ISSUE 5

The trial court erred in admitting the photograph of David Swazo, because it was irrelevant and its introduction violated its own order.

ISSUE 6

It was reversible error for Officer Robb and Prosecutor Flynn to aver that the Appellant was guilty.

ISSUE 7

The prosecutor's statement to the jury that the defendant must explain coincidence shifted the burden of proof and requires reversal.

ISSUE 8

The State's failure to inform the defense that witness Lacey had reported other "incidents" and Lacey's perjury at trial denied Appellant his right to due process and violates the *"Brady"* Rule.

ISSUE 9

Systematic denial of petitioner's various rights culminated in the violation of petitioner's basic and inalienable rights to due process of law under the Wyoming and United States Constitutions.

## FACTUAL BACKGROUND

In the evening of January 5, 1986, a woman walking home from a bar in Rock Springs, Wyoming was offered a ride from three men in an extended-cab pickup truck. The men were Phillips, Jetty Lee Harvey and David Swazo. The woman ignored them and continued walking. Phillips, the driver of the truck, told Harvey he wanted to grab the woman. Harvey considered this a dare. Phillips continued driving the truck down the street, turned around, came back, and pulled up beside the woman. Harvey exited the truck and told the woman she was going to have a ride. The woman tried to run past Harvey, but Harvey grabbed her by her arm and picked her up using a "bear hug." The woman was pulled into the truck.

A pizza delivery man, Ron Lacey, was counting his tips for the evening when he witnessed the abduction. Concerned, he followed the truck through Rock Springs, onto Interstate 80, and as it exited an off ramp from Interstate 80. The truck entered a trailer court, and Lacey dialed 911 to report the incident to authorities.

Inside the truck, the woman kicked and screamed. She realized the men planned to rape her after Phillips rubbed the inside of her leg. Swazo was sitting in the back seat of the truck and pulled the woman back there with him. As Phillips drove, Swazo removed the woman's clothes. Swazo then licked her breasts and her vagina and attempted to penetrate her. Phillips stopped the truck, said he wanted some, turned around in his seat and began to remove his pants. The police arrived as Phillips was removing his pants. The attack ended after police approached the vehicle.

Swazo admitted the incident, pled guilty, and was sentenced to 15 to 25 years in the penitentiary. Phillips was charged with kidnapping and first degree sexual assault on January 9, 1986. Phillips' trial began July 21, 1987 and, after three days of testimony, a jury found him guilty on both

counts. *Phillips I*, 774 P.2d 118. We found the delay in bringing the case to trial denied Phillips his right to a speedy trial, reversed the conviction and dismissed the charges. *Id.* at 125. We issued our decision on May 5, 1989. *Id.* at 118.

On July 7, 1989, Phillips was charged with conspiracy to commit kidnapping and conspiracy to commit sexual assault relating to the January 5, 1986 incident. On August 2, 1989, Phillips petitioned this court for a writ of prohibition to stop the prosecution. We denied the petition on September 18, 1989. 779 P.2d 291. On December 13, 1989, the district court issued an order certifying questions to the Wyoming Supreme Court. The questions mirrored the issues raised on this appeal including double jeopardy, speedy trial and vindictive prosecution questions. We remanded the case to district court with the questions unanswered on January 2, 1990. Venue was moved from Sweetwater County to Uinta County on February 5, 1990.

Trial commenced on February 12, 1990. The State's witnesses included the delivery man who witnessed the abduction, the victim, police officers involved in the apprehension of Phillips and the investigation of the crime, and Jetty Lee Harvey, one of Phillips' co-conspirators. See *Harvey v. State*, 835 P.2d 1074 (1992). Phillips testified in his own behalf. On February 21, 1990, a jury found Phillips guilty on both counts. Phillips was sentenced to 20 to 30 years in the state penitentiary.

## DISCUSSION

### 1. Double Jeopardy

■ The protection against being put in jeopardy more than once for the same offense is embodied in both the United States and Wyoming Constitutions. Article 1, § 11 of the Wyoming Constitution states:

No person shall be compelled to testify against himself in any criminal case, nor shall any person be twice put in jeopardy for the same offense. If a jury disagree, or if the judgment be arrested after a verdict, or if the judgment be reversed for error in law, the accused shall not be deemed to have been in jeopardy.

Amendment V of the United States Constitution states in part:

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *.

The double jeopardy protections of the United States Constitution apply to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969). The double jeopardy provisions of the Wyoming and United States Constitutions have been held to have the same meaning and are coextensive in application. *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977).

The double jeopardy clauses provide three related protections:

"It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."

*Id.*, quoting from *United States v. Wilson*, 420 U.S. 332, 342–43, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975). Phillips was convicted in his first prosecution. Thus, this case concerns whether it is a second prosecution for the same offense after conviction.

The United States Supreme Court confronted the parameters of this second type of protection in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In *Grady*, a vehicle driven by the respondent, Thomas Corbin, crossed a double yellow line on a highway and struck two approaching vehicles. A driver of one vehicle later died from her injuries. Corbin was charged with driving while intoxicated and failing to keep right of the median. He pleaded guilty to these charges. Two months later, a grand jury indicted Corbin

on manslaughter charges for the death of one of the other drivers. 110 S.Ct. at 2089. The Court affirmed the New York Court of Appeals' prohibition of prosecuting the manslaughter charges because the conduct necessary to prove the offense, *i.e.*, driving while under the influence and crossing the double yellow line, was the same conduct for which Corbin had previously pled guilty on the traffic charges. *Id.* at 2094.

The Court in *Grady* held that:

[T]he Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove *conduct* that constitutes an offense for which the defendant has already been prosecuted.

110 S.Ct. at 2087 (emphasis added). The Court went on to say that the critical inquiry in determining whether the government will prove conduct in the subsequent prosecution that constitutes an offense for which the defendant has already been prosecuted is what conduct the State will prove, not the evidence the State will use to prove it. Thus, the test is not an "actual evidence" or "same evidence" test. While the presentation of specific evidence in one trial does not forever prevent the government from introducing the same evidence in a subsequent proceeding, *see Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990), a state cannot avoid the Clause merely by altering in successive prosecutions the evidence offered to prove the same conduct. *Grady*, 110 S.Ct. at 2093.

Thus, the Court distinguished between the conduct needed to prove an offense and the evidence introduced to prove the conduct. The Court in *Grady* noted that the evidence in the driving while intoxicated charge was the defendant's blood alcohol and failing to keep right of the median and that the State in its bill of particulars admitted that the same evidence would be used to prove the manslaughter charge. The Court opined that if, however, the evidence used in the manslaughter charge had involved different conduct, such as driving too fast in a heavy rain, there would be no double jeopardy violation. The presentation of specific evidence at one trial does not prevent its introduction at a subsequent proceeding. *Id.* at 2093. In this case, the conduct constituting the crime of conspiracy is separate and apart from the conduct that makes up the substantive offenses of rape and kidnapping.

This case differs from *Grady* in that the conduct constituting conspiracy is an agreement beforehand and an overt act, whereas the conduct constituting the substantive crimes of actual rape and kidnapping is subsequent to the agreement and overt act as defined in W.S. 6–2–302 and 6–2–201:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement.

W.S. 6–2–302; and

(a) A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business or from the vicinity where he was at the time of the removal * * *.

W.S. 6–2–201.

■ A conspiracy is an agreement between two or more persons to do an unlawful act. *Jasch v. State*, 563 P.2d 1327, 1332 (Wyo.1977); *Goldsmith v. Cheney*, 447 F.2d 624, 628 (10th Cir.1971); W.S. 6–1–303. The crime of conspiracy is complete when an agreement has been made and an overt act or acts are performed to further the unlawful design. *Id.* The overt acts need not be criminal in themselves. *United States v. Watson*, 594 F.2d 1330, 1341 (10th Cir.), *cert. denied sub. nom., Brown v. United States*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Thus, in the later case of *United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), which like this case involved subsequent prosecution for conspiracy after conviction of a substantive offense, the United States Supreme Court, referring to the previously cited quotation from *Grady*, recognized

and then resolved the uncertainty and confusion created by *Grady* when it stated:

> Taken out of context, and read literally, this language supports the defense of double jeopardy. But we decline to read the language so expansively, because of the context in which *Grady* arose and because of difficulties which have already arisen in its interpretation.

*Felix,* 112 S.Ct. at 1383–84. Then, quoting with approval from *United States v. Bayer,* 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947), the Court stated:

> In language applicable here, we pointedly stated that "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself." [331 U.S. at 542, 67 S.Ct. at 1399]; *see also Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946) ("[T]he commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses ... [a]nd the plea of double jeopardy is no defense to a conviction for both offenses").

*Felix,* 112 S.Ct. at 1384.

■ Conspiracy and the completed substantive offense are separate offenses. *Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1974). *See also United States v. Sammons,* 918 F.2d 592, 604 (6th Cir.1990) (holding *Grady v. Corbin* does not prohibit prosecution of a conspiracy to distribute marijuana and a violation of the Travel Act, 18 U.S.C. § 1952, making it illegal to travel in aid of a racketeering enterprise); and *Apostoledes v. State,* 83 Md.App. 519, 575 A.2d 792 (1990) (*Grady v. Corbin* does not control result in conspiracy/murder double jeopardy challenge).

In this case, the evidence from Phillips' first trial and second trial overlapped. The overlapping evidence includes testimony from the victim recounting the time she first encountered Phillips until her rescue. Notwithstanding evidence detailing the abduction and sexual assault, the evidence of the overt acts preceding this entails conduct that does not constitute the crimes of kidnapping or rape. Phillips telling Harvey to grab the woman and Harvey undertaking (agreeing) to do so, turning the truck around on the street, stopping the truck, telling the victim she was going to have a ride, approaching the woman, and stopping her are not acts that constitute elements of the crimes of first degree rape or kidnapping. However, they are conduct that satisfy the elements of an agreement beforehand and an overt act necessary to prove a conspiracy. Prosecuting Phillips on conspiracy charges after his conviction for the substantive crimes does not violate his right to be protected against double jeopardy.

### 2. Speedy Trial

■ Phillips bases his argument of a speedy trial violation on the span between the time of the incident and the time he was brought to trial. *Phillips I* and its companion case, *Harvey v. State,* 774 P.2d 87 (Wyo.1989), gave us the opportunity to delineate and discuss the right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution and Art. I, § 10 of the Wyoming Constitution. In *Harvey,* we stated that "the speedy trial clock starts to run upon arrest or when the complaint is filed." 774 P.2d at 94. See also *United States v. Marion,* 404 U.S. 307, 314–15, 92 S.Ct. 455, 460, 30 L.Ed.2d 468 (1971); and *United States v. MacDonald,* 456 U.S. 1, 6–7, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). Thus, we do not examine this issue by calculating the passage of time from January 5, 1986, the date of incident, to February 12, 1990, the date of the trial. Instead, we look at the period of time from the filing of the complaint, July 7, 1989, until the date of the trial, February 12, 1990.

■ Our speedy trial analysis requires we balance four factors. This test requires us to look at: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of her speedy trial right; and (4) the prejudice to the defendant. *Phillips I,* 774 P.2d at 121, *citing to Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33

L.Ed.2d 101 (1972). However, when the length of the delay is neither "presumptively prejudicial" nor significantly long, no further analysis is warranted. *Osborne v. State*, 806 P.2d 272, 277 (Wyo.1991); *Phillips I*, 774 P.2d at 121. The time span here presents such a situation.

■ Between the time the complaint was filed to the time of trial spans 220 days. The time from the date the information was filed, October 19, 1989, to the time of trial spans 116 days. Rule 204 of the Uniform Rules for the District Court of the State of Wyoming contains a 120–day deadline from the filing of the indictment or information for bringing a defendant to trial in order to ensure a speedy trial. Although the rule is advisory only, 774 P.2d at 122, the time frame here fits well into the rule.

■ Furthermore, delays attributable to the defendant are subtracted from the computation.• District Court Rule 204(c) and (d). *Osborne*, 806 P.2d at 277. Phillips orally requested a continuance from county court proceedings on July 28, 1989, and then filed a petition for writ of prohibition with this court on August 2, 1989. We denied the petition on September 19, 1989. From July 28 to September 19 is a span of 53 days. On December 13, 1989, an order certifying questions to this court on Phillips' motion was entered. We remanded the case to district court with the questions unanswered on January 2, 1990. From December 13 to January 2 is a span of 20 days. The time from the filing of the complaint to the date of trial, with time deducted for delays attributable to Phillips, is only 147 days. The time from filing of the information to the date of trial with time deducted for delays attributable to the defendant is only 96 days. Thus, we conclude that Phillips' right to a speedy trial for the conspiracy charges was not violated.

### 3. Preindictment delay

■ Wyoming has no statute of limitations for criminal offenses, and prosecution for such offenses may be commenced at any time during the life of the offender. *Story v. State*, 721 P.2d 1020, 1026, 65 A.L.R.4th 1011 (Wyo.1986). However, when a delay in bringing charges results in prejudice to a defendant, due process considerations may arise. *Id.* at 1027; *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977). In order to require dismissal of a charge, it is necessary that a preindictment delay cause "substantial prejudice to [appellant's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Story*, 721 P.2d at 1027, *quoting from United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971). Substantial prejudice requires the showing of the loss of a witness, exhibit or other evidence, the presence of which would probably bring a different result. *Story*, 721 P.2d at 1029.

■ Phillips directs us to a Tenth Circuit Court of Appeals case for the proposition that if a defendant makes a prima facie showing of substantial prejudice, the burden shifts to the State to show a proper motive for the delay. *United States v. Comosona*, 614 F.2d 695, 696 (10th Cir. 1980). A prima facie showing requires "[t]hat quantum of evidence that suffices for proof of a particular fact until the fact is contradicted by other evidence." *Black's Law Dictionary* at 1190 (6th ed. 1990). Phillips makes a number of conclusory statements in his brief concerning the effect of the lapse of time between the time of the offense and the time of the filing of charges. He states that every witness who testified could not remember certain details. However, Phillips does not cite to the record to show where these memory failures occurred nor does he explain how and to what extent he suffered prejudice from these failures. Our own examination of the record reveals nothing to conclude that Phillips was substantially prejudiced. His conclusory statements are insufficient to make a prima facie showing. *Comosona*, 614 F.2d at 697.

We find Phillips was not prejudiced by the length of time between the offense and the filing of the complaint. Because Phillips suffered no prejudice, we need not

examine what prompted the State to file charges when it did.

### 4. Vindictive Prosecution

█ Phillips claims his due process rights were violated by the prosecution because it filed the conspiracy charges following reversal of the substantive charges. He bases this claim on comments the county prosecutor made to the press when the prosecutor filed the new charges. The *Casper Star–Tribune* in its July 8, 1989 edition reported that "[the county prosecutor] said that after first degree kidnapping and first degree sexual assault convictions * * * were overturned last May he and his staff determined 'that it is proper and appropriate—and compelled, really—to explore' filing conspiracy charges against" Phillips. The filing of the new charges here, even if the prosecutor felt compelled, for whatever reason, does not constitute prosecutorial vindictiveness if the charges filed stated a criminal offense under the criminal laws of the state of Wyoming.

█ Where a defendant has exercised a legal right and the government responds in a way that punishes him for taking such action, an improper vindictive motive is presumed. *United States v. Goodwin,* 457 U.S. 368, 373–74, 102 S.Ct. 2485, 2488–89, 73 L.Ed.2d 74 (1982). The presumption arises when the government acts by imposing increased charges, such as changing a charge from a misdemeanor to a felony or subjecting him to the possibility of greater sentence or in some other way "upping the ante." *Blackledge v. Perry,* 417 U.S. 21, 28, 94 S.Ct. 2098, 2102–03, 40 L.Ed.2d 628 (1974); *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

█ A decision to prosecute for other crimes committed does not necessarily result in a finding of vindictiveness. Here, the conspiracy charges did not result in a greater imposition of a penalty than Phillips received at the earlier trial on separate charges. *See Blackledge,* 417 U.S. at 28, 94 S.Ct. at 2103. *Cf. Lane v. Lord,* 815 F.2d 876, 879 (2nd Cir.1987) (adding a conspiracy charge in new trial after declaration of a mistrial not vindictive). The con-

spiracy and the substantive charges were two separate components in a continuing criminal episode. We have held that requiring the actor to take responsibility for each criminal act in the episode following successful appeal does not constitute vindictive prosecution even when consecutive life sentences result. *Osborn v. State,* 806 P.2d 259, 264–65 (Wyo.1991).

█ Charging decisions rest within the discretion of the prosecutor. *Billis v. State,* 800 P.2d 401, 417 (Wyo.1990). A charging decision is not improper unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution. *Goodwin,* 457 U.S. at 380, n. 11, 102 S.Ct. at 2492, n. 11. The public's demand for prosecution for the additional crimes may figure into the prosecutor's assessment without it resulting in vindictiveness. *Hardwick v. Doolittle,* 558 F.2d 292, 301 (5th Cir.1977). We cannot conclude nor can we allow the presumption that prosecutorial vindictiveness was involved in the decision to bring and prosecute conspiracy charges against Phillips.

### 5. Admission of the Swazo Photograph

█ During his direct examination, Phillips testified that he thought David Swazo was handsome, that the victim stated Swazo was good looking, and that the victim willingly participated in sexual activity with Swazo. On cross-examination, the State introduced into evidence a photograph of Swazo that had been taken the day before. Phillips objected on grounds of relevance and that the photograph was not listed during a pretrial conference conducted on January 30, 1990. Phillips was also concerned because Swazo had his nose broken after the abduction incident. The court allowed its admittance, stating it was probative under W.R.E. 403. The court stated that the photo's probative value went to who Swazo is and the credibility of the victim and Phillips concerning whether the victim willing engaged in sexual activity with Swazo.

A pretrial conference in a criminal case is permitted under W.R.Cr.P. 19. That rule states:

> At any time after the filing of the indictment or information the court upon motion of any party or upon its own motion may order one (1) or more conferences to consider such matters as will promote a fair and expeditious trial. At the conclusion of a conference the court shall prepare and file a memorandum of the matters agreed upon. No admissions made by the defendant or his attorney at the conference shall be used against the defendant unless the admissions are reduced to writing and signed by the defendant and his attorney. This rule shall not be invoked in the case of a defendant who is not represented by counsel.

The rule is nearly identical to F.R.Cr.P. 17.1. Thus, we may look to the federal courts for help in construing the meaning of this rule. *Dobbins v. State*, 483 P.2d 255, 258 (Wyo.1971).

The rule is a codification of the court's inherent power to manage the litigation before it. *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983). The use of a pretrial conference is not a limitation in itself for preventing the introduction of evidence at trial. *Cf. United States v. Cerro*, 775 F.2d 908, 915 (7th Cir.1985) (matters decided at pretrial conference cannot be used as a limitation to prevent defendant from exercising Sixth Amendment right to confront witnesses against him). *See also* 2 M. Rhodes, Orfield's Criminal Procedure under the Federal Rules § 17.1:3 (2d ed. 1985). Thus, the fact that the photograph was not discussed at the pretrial conference does not make it inadmissible.

 Wyoming Rules of Evidence 401, 402, and 403 control the admissibility of relevant evidence. W.R.E. 401 states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

W.R.E. 402 states:

> All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible.

W.R.E. 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Admission of evidence is within the sound discretion of the trial court and, absent an abuse of discretion, the trial court's decision will not be disturbed. *Taylor v. State*, 642 P.2d 1294, 1295 (Wyo.1982).

 Photographs are admissible if they correctly portray the subject matter, do not convey a false impression, and if their probative value is such as to outweigh the possibility of undue prejudice from such circumstances as their gruesome character. *Reeder v. State*, 515 P.2d 969, 973 (Wyo.1973). Reversal is required for the admission of a photograph only if the photograph has little or no probative value and is extremely inflammatory or introduced merely to inflame the jury. *Shaffer v. State*, 640 P.2d 88, 97, 31 A.L.R.4th 166 (Wyo.1982). As the trial court explained, the photograph of Swazo was relevant for determining the credibility of two witnesses. Although Swazo's nose had been broken after the abduction incident, the photograph does not depict a gruesome looking person so as to result in prejudice. Phillips was able to identify Swazo from the photograph and testified he had no problem identifying him. Thus, the photograph correctly portrayed the subject matter. There was no clear abuse of discretion in admitting the photograph.

### 6. Averment of Guilt

 In *Stephens v. State*, 774 P.2d 60, 68 (Wyo.1989), we held that:

> [T]estimony offering an opinion as to the guilt of the defendant, when elicited by a prosecuting attorney, should be perceived as error per se.

Phillips claims that a police officer testifying for the State gave such an opinion and that the prosecutor's use of the term "abduction" also amounted to an opinion as to guilt.

The officer was testifying about events following the stop of Phillips' truck when he was asked:

Q. Had you stayed in the area of Everett Phillips, what would your next movement or next sequence have been?

A. Well, I had a few more questions I was going to ask him but I pretty much made up my mind I was going to place him under arrest for further—or for further investigation reference kidnap and sexual assault.

The officer continued that he was aware that Harvey and Swazo were already under arrest, but the sergeant on duty informed him that it was not necessary to arrest Phillips at that time because Phillips had agreed to come to the police station voluntarily.

In *Stephens*, the statements found to rise to error per se came from a counselor/therapist, a social worker and a psychotherapist who all testified in a trial on a charge of sexual abuse that in their opinion the victim had been sexually abused and that the defendant was the perpetrator. 774 P.2d at 67. We held that allowing these witnesses to testify that defendant was the perpetrator amounted to an opinion as to his guilt and could have decided the case for the jury. *Id.*

 The testimony elicited in *Stephens* contrasts greatly with the testimony here. The officer's statement that he wanted to place Phillips under arrest for investigation of a crime does not implicate his guilt but simply indicates that the officer thought that probable cause existed to investigate the matter further. Probable cause is something more than mere suspicion that a crime has been committed by a suspect but need not rise to the level of proof of guilt, nor even to the level of prima facie evidence of guilt. *Jandro v. State*, 781 P.2d 512, 518 (Wyo.1989). The officer testified to the events showing why he had probable cause to arrest Phillips. We do not find

that an officer's statement that he wished to place Phillips under arrest based on what he observed amounts to an opinion expressing guilt.

 The prosecutor used the term "abduction" when asking a question to which Phillips lodged an objection. He asked another police officer:

Okay. I'm going to give you a red pen. Take a moment, if you need to, to orient yourself with the map. Can you locate on the map the approximate point where the abduction occurred?

The court sustained Phillips' objection and instructed the police officer that it was an "alleged abduction." The prosecutor's use of the term was not testimony. Thus, the use of the term does not fall under the error per se rule of *Stephens*. Phillips further complains that the court gave no curative or limiting instruction. However, although Phillips moved for mistrial based on these statements, we find no place in the record where such an instruction was requested. In fact, Phillips' counsel felt a limiting instruction would be ineffective and advocated against using a limiting instruction. We cannot find error for failure to give such an instruction if none is requested. *Sybert v. State*, 724 P.2d 463, 467 (Wyo.1986).

## 7. Closing Argument

 Phillips contends the following concluding remarks of the State's rebuttal argument prejudiced him:

Ladies and Gentlemen, remember that when you consider what the Defense said, you've got to consider all of those different points, all of those different coincidences, and it isn't enough that—it should not be enough for you to say, "Well, the Defense can explain this one or that one, so I guess there is a reasonable doubt" because the State isn't giving you these things one by one. The State is saying that when they are all added together, they take on a strength independent from what they would have alone. The old Roman example. You can take a stick and maybe break it easily. But if you get two sticks, it's a

little harder. And if you get three and four and add them to the bundle, it gets harder and harder to break them.

Remember, when you deal with the Defense's concerns, you have to deal with all of the points the State has raised. The Defense. Did not try to do that. Most of the so-called coincidences that were raised were flat out ignored by the Defense and I suggest to you that the reason they were ignored is because it would prove too embarrassing, too uncomfortable, too difficult to try to give you a rational explanation. It's easier to sweep them under the rug. Well, Ladies and Gentlemen, please don't do that yourselves in the jury room. Don't sweep those thoughts under the rug. You remember them. You talk about them and you consider them. The evidence is such that if you do that, there is really only one verdict that—one just, one fair verdict you can come back with. And that verdict is to look at all the different elements that have to be proven for the two crimes charged.

Remember, the Defense, doesn't seem to be arguing to you that there is any reason to convict on the lesser. That was ignored. They are focusing on the same things we are, an agreement to commit two crimes, kidnapping and sexual assault. That's what the evidence supports and it supports it beyond a reasonable doubt. And for those reasons, the State is asking you to return with your verdict on both of those counts and that your verdict be guilty as charged.

Phillips contends that these remarks shifted the burden of proof to him. We disagree.

To determine the propriety of a closing argument, we examine it in its entirety. *Hopkinson v. State*, 632 P.2d 79, 166 (Wyo. 1981). The purpose of closing argument is to allow counsel to offer ways of viewing the significance of the evidence. *Wheeler v. State*, 691 P.2d 599, 605 (Wyo.1984). The scope of permissible argument by counsel to the jury is within the discretion of the trial court and will not be disturbed absent a clear or patent abuse of discretion. *Mayer v. State*, 618 P.2d 127, 132

(Wyo.1980). The court should allow a wide latitude of comment on the evidence. *State v. Spears*, 76 Wyo. 82, 300 P.2d 551, 561 (1956).

The burden is on the State to prove every element of a crime charged. *Capwell v. State*, 686 P.2d 1148, 1157 (Wyo.1984). Reading the prosecutor's closing and rebuttal remarks, we do not find any suggestion that the burden of proof shifted to the defendant. The State commented upon the evidence and upon the defendant's view of the evidence. Twice, within the comments Phillips finds offensive, the State reminded the jury that proof beyond a reasonable doubt was necessary in order for the jury to find Phillips guilty. The prosecutor's closing and rebuttal remarks were not improper.

### 8. Exculpatory Evidence

If the government has possession of exculpatory evidence, failure to produce it would violate due process where the evidence is material to either the guilt or punishment of an individual, regardless of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963); *Wilde v. State*, 706 P.2d 251, 255 (Wyo. 1985). Phillips claims that the prosecution should have produced background material on one of its witnesses in accordance with the *Brady* rule.

Prosecution witness Ron Lacey testified about witnessing the abduction of the victim, following the truck through the streets of Rock Springs, and reporting it to the police through a 911 line. Lacey testified that he never previously made a call using 911 before. Following trial, Phillips discovered that Lacey had reported a number of suspicious incidents before to other law enforcement agencies. The incidents included reporting seeing a van with the words "Help Me" written in dust and finding the decayed body of a girl.

Phillips claims the background information on Lacey would have been useful for impeachment purposes. Impeachment evidence is considered to be the same

as exculpatory evidence for *Brady* purposes "if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985). However, failure to provide evidence useful to the defense but not likely to change the result does not require reversal. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). In order to warrant reversal for failing to disclose potential impeachment evidence, the evidence must be "material," not simply favorable. The United States Supreme Court has articulated the following test to determine if evidence is "material":

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

473 U.S. at 682, 105 S.Ct. at 3383. The evidence withheld here is not material under this test.

Lacey testified to witnessing the abduction, following the truck, and notifying the police. Evidence of these events was also presented through the testimony of the victim, Phillips' co-conspirator Harvey, and various police officers. The other evidence so overwhelmingly established that the victim was grabbed, put in the truck, and the truck travelled to the place where appellant was apprehended by police that it was really without dispute—and that is all Lacey testified to. With these facts so clearly established, Lacey's credibility made no difference. His testimony could have been totally discounted. It, therefore, was not material in that there was not a probability sufficient to undermine confidence in the outcome of the case. The prosecution's failure to give Lacey's background information to Phillips does not violate *Brady*. *See United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir.1989), *cert. denied* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990).

*9. Cumulative Error*

Phillips' final issue amounts a claim of cumulative error. A claim of cumulative error depends upon error being recognized. *Thom v. State*, 792 P.2d 192, 196 (Wyo. 1990). No error exists in this case.

Finding no error in the issues brought by appellant, this case is

Affirmed.

URBIGKIT, C.J., dissents (dissent to be filed at a later date, *see Harvey v. State*, 835 P.2d 1074 (1992)).