Jimmie Lee SPENCER, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 95–224.

Supreme Court of Wyoming.

Oct. 22, 1996.

Sylvia L. Hackl, State Public Defender; Deb Cornia, Appellate Counsel; Gerald M. Gallivan, Director of the Defender Aid Program; and Walter E. Deacon and Walter Eggers, Student Interns for the Defender Aid Program, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker, Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Anjanette C. Wayman, Student Intern for the Prosecution Assistance Program, for Appellee.

* Chief Justice at time of oral argument.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

MACY, Justice.

Appellant Jimmie Spencer appeals from the trial court's amended judgment and sentence which sentenced him to serve a term in the state penitentiary of not less than two years nor more than three years after a jury found him guilty of delivering cocaine.

We affirm.

## ISSUES

Appellant requests our review of the following issues:

ARGUMENT I

Applying [the] plain error standard of review, was [Appellant] denied a fair trial when the trial court repeatedly allowed the introduction of evidence concerning his character and prior bad acts in violation of Wyoming Rules of Evidence 404(b)?

ARGUMENT II

Was Appellant denied a fair trial as guaranteed by the due process clauses of the United States and Wyoming constitutions because of prosecutorial misconduct?

## FACTS

Through the use of informants, Laramie County Sheriff's Department detectives discovered in early June 1994 that several individuals were largely responsible for the crack cocaine sales in the Cheyenne area. At about the same time, the detectives learned that an individual (the informant) was using crack cocaine. The detectives told the informant that she faced potential criminal charges for aiding and abetting in the delivery of a controlled substance. She, consequently, entered into an agreement with the detectives which provided that, in exchange for her becoming a confidential informant, the detectives would recommend to the district attorney's office that she not be prosecuted for her drug use and would also try to get her boyfriend out of jail.

The detectives asked the informant to make a "shopping list" of the names of those

individuals from whom she thought she could buy crack cocaine. She did not include Appellant's name on the original list. When the informant later saw his picture on the wall of a briefing room, she indicated that she knew the man in the picture and that she might be able to buy crack cocaine from him.

The informant participated in three controlled buys during the next two weeks. On August 10, 1994, she and the detectives planned a controlled buy from Appellant. Before the informant attempted to make the buy, the detectives searched her to ensure that she did not have any crack cocaine in her possession. The detectives gave the informant $50 in "buy" money and furnished her with a wireless transmitter.

The informant unsuccessfully attempted to make three controlled buys before she got to Appellant's residence. When the informant got to Appellant's home, she entered the house and purchased one "rock" of crack cocaine for $50. After the informant left Appellant's house, the detectives searched her again. At that time, they found one "rock" which was wrapped in the small corner of a plastic baggie, and the informant did not possess the buy money. The informant later attempted to make a second controlled buy from Appellant, but she was not successful.

Appellant was arrested for unlawfully distributing crack cocaine. A jury found him guilty of the charged offense, and he appeals to this Court.

## DISCUSSION

### A. Other Bad Acts Evidence

Appellant claims that, under the plain error standard of review, he was denied a fair trial when the trial court allowed evidence about his character and other bad acts to be introduced in violation of W.R.E. 404(b). Appellant urges this Court to analyze the five factors established in *Dean v. State*, 865 P.2d 601, 609–10 (Wyo.1993), in determining

whether the trial court's admission of the evidence in question was plain error. The State argues that Appellant has failed to show that the admission of the evidence amounted to plain error.

W.R.E. 404(b) governs the admissibility of other bad acts evidence:

(b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In Appellant's first claim of error, he contends that the testimony of two detectives as well as of the informant served no purpose but to inflame the jury and prejudice Appellant.[1] Specifically, Appellant disapproves of the following testimony from one of the detectives:

Q. Okay. And then over the period of your investigation, did you develop other informants?

A. Maybe we had two more develop by then.

Q. Did these informants—. . . through other intelligence, were you able to pinpoint an area of Cheyenne that was largely responsible for the crack cocaine sale.

A. Yes.

Q. And where was that?

A. The 1000 block of East 8th Street.

Q. And was there more than one dealer in that area, according to the information that you had?

A. Yes, there was.

. . . .

Q. And during the course of the investigation, did those dealers come under investigation?

A. Yes, they did.

---

1. Appellant also argues that the State impermissibly referred to Appellant's character and other bad acts during its opening and closing statements. Since Appellant does not identify which comments he is concerned about, we will assume that he is concerned about the statements on the

subject matter dealt with in the referenced portions of testimony. Our discussion with regard to the testimony at issue, therefore, will encompass our views on the comments which the prosecutor made during her opening and closing statements.

Q. Was [Appellant] one of them?

A. Yes.

. . . .

Q. During the course of your investigation, did you come across [the informant]?

A. Yes.

Q. Okay. And how did that occur?

A. We had another informant that was associating with [the informant] ..., and we were trying to get—corroborate information about East 8th Street. This informant was not directly set to purchase narcotics, ... only just to associate and find out if, in fact, drugs were coming from the East 8th Street address.

We followed [the informants] down to East 8th Street—I believe it was two times previous to contacting [the informants]— where people were coming in and out of 1012 [Appellant's residence], and speaking with, I believe, [the informant] and other informants.

Q. What information did you gather about [the informant] with regard to her involvement in the crack cocaine community?

A. Was a user, more or less.

Appellant did not make an objection to this testimony or a request for a limiting instruction. He also criticizes the following testimony which was given by another detective:

Q. In the early stages of the investigation, did you obtain the name of [Appellant]?

A. Yes.

Q. Was that prior to your contact with [the informant]?

A. Yes, I believe so.

Q. Specifically, what information did you have about [Appellant] with regard to crack cocaine?

A. I received information that [Appellant] was receiving his crack cocaine from a friend of his in Denver.

Q. And was he then dispersing it in Cheyenne?

A. Yes.

Again, Appellant failed to object to this testimony or request a limiting instruction. Finally, although his citation to the record does not seem to be correct, Appellant appears to be complaining about the following testimony which came from the informant:

Q. How much were you buying from [Appellant] at that time?

A. A fifty.

Q. A fifty?

A. Yes.

Q. And how often were you doing that?

A. I only did it in June. I did it about four or five times in June.

Here again, Appellant did not object to the testimony or offer a limiting instruction.

 We cannot consider the five-factor analysis which we adopted in *Dean* and modified in *Vigil v. State*, 926 P.2d 351, 355 (Wyo. Oct. 11, 1996), in determining whether admitting the above-referenced testimony into evidence constituted plain error as that analysis is a trial level analysis. It is not our role to analyze these factors when we are reviewing an argument that other bad acts testimony which was admitted into evidence without objection should have been excluded. Our function is to determine whether the admission of such evidence amounted to plain error:

"'A three-part test has been established for determining whether an error may achieve the status of plain error. First, the record must be clear as to the incident which is alleged as error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, that party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.'"

*Vigil*, at 357 (quoting *Schmunk v. State*, 714 P.2d 724, 739 (Wyo.1986) (quoting *Bradley v. State*, 635 P.2d 1161, 1163–64 (Wyo.1981))).

 The second prong of the plain error analysis is pertinent in this case. The purpose of the first detective's testimony was to convey the basis for the detectives' suspicion of Appellant which was the foundation of their investigation. The testimony from the second detective illustrated the detectives'

gradual accumulation of information about Appellant and the general timing of their awareness that a transaction between Appellant and an informant might be fruitful. The informant's testimony showed that she was familiar with Appellant and that she might be able to make a buy from him so that he could be identified. The evidence was admissible under W.R.E. 404(b) because it was relevant to prove the identity of Appellant as well as to establish that the detectives knew that Appellant might be engaging in illegal activities. We hold that a clear and unequivocal rule of law was not violated and that admitting the evidence was not plain error.

## B. Disclosure of Evidence

Appellant contends that the prosecution violated its duty to disclose material and exculpatory evidence and that his right to have a fair trial was violated. The State counters that Appellant has not made any effort to prove that the evidence in question would have been favorable to him or that he was prejudiced by the prosecution's alleged failure to disclose it and that, in any event, the prosecution did properly disclose the evidence.

The United States Supreme Court has held that " 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *Wheeler v. State*, 691 P.2d 599, 602 (Wyo.1984) (quoting *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963)). To establish a *Brady* violation, Appellant must prove (1) that the prosecution suppressed evidence; (2) that the evidence would have been favorable to him; and (3) that the evidence was material. *Relish v. State*, 860 P.2d 455, 459–60 (Wyo.1993). The United States Supreme Court has also held that " 'evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Relish*, 860 P.2d at 460 (quoting *United States v. Bagley*,

473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). There is " 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work.' " *Relish*, 860 P.2d at 459 (quoting *Moore v. Illinois*, 408 U.S. 786, 795, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972)).

This Court has declared that the prosecution does not have "a duty to disclose evidence which is only speculatively helpful to a defendant or which merely exhibits a potential for leading to *Brady* material." *Roderick v. State*, 858 P.2d 538, 544 (Wyo.1993). We have also noted that the failure to provide a defendant with evidence which is merely favorable or useful to him but not likely to change the outcome of his trial does not justify reversal under *Brady*. *Phillips v. State*, 835 P.2d 1062, 1074 (Wyo.1992).

Appellant initially contends that the prosecution failed to disclose two pieces of evidence. The first piece of evidence which Appellant is concerned about is the corner of the plastic baggie in which the crack cocaine "rock" was packaged. He claims that, had the defense known of the plastic baggie, it would have had it tested for fingerprints and that it would have altered the way the defense presented its case.

Appellant called the Division of Criminal Investigation's fingerprint expert as a witness. The expert testified that he did test the baggie for fingerprints and that he was not able to find any identifiable fingerprints on the baggie. He stated that the baggie was very small and that any kind of handling of it after it had been initially touched could have destroyed any fingerprints. He also opined that, since the baggie was with another object in a larger plastic bag, the movement between the outer bag, the small baggie, and the other object could have destroyed any identifiable fingerprints.

Since the fingerprint expert testified that he was not able to find any identifiable fingerprints on the baggie—Appellant's or anyone else's—we cannot see how Appellant was prejudiced by not having the baggie tested himself. Furthermore, Appellant called the fingerprint expert as his witness, and the

defense fully explored any potentially exculpatory evidence with regard to the fingerprints on the corner of the baggie.

■ The second piece of evidence which Appellant claims that the prosecution failed to disclose is a copy of the "buy" money from the August 10, 1994, drug transaction. Prior to the trial, the prosecution informed Appellant that a copy of the "buy" money did not exist. The prosecution subsequently discovered that a copy did exist, and, on the day before the trial began, the prosecution made it available to Appellant.

Appellant asserts that, had the prosecution disclosed this evidence within a reasonable time prior to the trial, the defense could have altered the strategy of the case and that a reasonable probability exists that the outcome of the trial would have been different. We cannot discern how the evidence would have been favorable to Appellant or how its existence was material, and Appellant fails to enlighten us. We, therefore, cannot resolve this issue in Appellant's favor.

■ Appellant next claims, without detailing how, that the prosecution engaged in prosecutorial misconduct which prejudiced Appellant's ability to receive a fair trial by withholding the following information:

(1) an alleged statement Appellant gave to [a nontestifying informant] while Appellant was in jail was not disclosed to defense counsel until the day before trial;

(2) at least one statement Appellant allegedly made to [a detective] when Appellant was arrested;

(3) the State's chief informant[']s ... agreement to work as an informant for the [Laramie County Sheriff's Department] was not disclosed until the middle of the State's presentation of its case;

(4) [a witness's] statements implicating [Appellant] of selling cocaine prior to the alleged August 10, 1994 transaction; and

(5) The state's failure to comply with Appellant's demand for notice of all [W.R.E.] 404(b) evidence which the State intended to use at trial.

Our standard for reviewing prosecutorial misconduct claims is as follows:

Our rule is that we must examine the entire record to determine whether the conduct asserted as prosecutorial misconduct resulted in substantial prejudice to the defendant amounting to the denial of a fair trial. The burden of establishing prejudice is assigned to the defendant when prosecutorial misconduct is asserted.

*Tennant v. State*, 786 P.2d 339, 346 (Wyo. 1990) (citation omitted).

W.R.Cr.P. 16 provides in pertinent part:

(a) *Disclosure of Evidence by the State.*

(1) Information Subject to Disclosure.

(A) Statement of Defendant.

(i) Upon written demand of a defendant the state shall permit the defendant to inspect and copy or photograph:

1. Any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state;

2. The substance of any oral statement which the state intends to offer in evidence at the trial made by the defendant whether before or after arrest . . .

. . .

(C) Documents and Tangible Objects.—Upon written demand of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.

. . .

(2) Information Not Subject to Disclosure.—Except as provided in subparagraphs (1)(A), (1)(B), and (1)(D), this rule does not authorize the discovery or inspection of reports, memoranda, or

other internal state documents made by the attorney for the state or other state agents in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses except as provided in Rule 26.2.

W.R.Cr.P. 26.2 provides in pertinent part:

(a) *Order for production.*—Upon order of the court, the attorney for the state or the defendant and the defendant's attorney shall produce for the examination and use of the other party, any written or recorded statement of a witness other than the defendant in their possession or which they may reasonably obtain and which relates to the subject matter about which the witness has testified or will testify and:

(1) Upon demand of the other party, the court shall order the statement to be produced after a witness has testified; and

(2) Upon motion of a party or upon its own motion, the court may require the statement to be produced at any time before trial.

. . . .

(f) *Definition.*—As used in this rule, a "statement" of a witness means:

(1) A written statement that is signed or otherwise adopted or approved by the witness or an oral statement made by the witness and contained in a stenographic, mechanical, electrical, or other recording, or a transcript thereof; or

(2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof . . .

■ The State informs us that the prosecution never intended to offer any of Appellant's oral statements into evidence. The prosecution was, therefore, not required under W.R.Cr.P. 16(a)(1)(A)(i)(2) to disclose them to Appellant.

■ With regard to the informant's agreement to work as an informant for the detectives, less than one week prior to the

trial, Appellant requested the informant's confidential file. The prosecution filed a motion to quash the subpoena duces tecum. At the hearing, the defense informed the trial court that it was interested in seeing some letters which were written to the trial court as a part of the informant's presentence report so that it could verify whether any of those letters contained prior inconsistent statements. The trial court ruled that the defense was entitled to have access to any such letters.

During the trial, Appellant moved for a mistrial, complaining that the informant's agreement had not been produced until after lunch on the first day of the trial. The State argues that, after the prosecution filed the motion to quash the subpoena duces tecum, it told the defense that it would provide the defense with a copy of the type of agreement which was used and that the agreement would have the date on it. The State claims that this was all that the defense requested until the first day of the trial when it asked for a copy of the original agreement.

Although Appellant did not have the informant's agreement until the first day of the trial, he did have all the relevant information which the agreement contained. Without having the benefit of an explanation from Appellant, we cannot perceive how Appellant was prejudiced by not receiving the original agreement earlier.

■ Appellant next complains about some statements made by one of the witnesses to the prosecution which implicated Appellant in the selling of cocaine prior to the August 10, 1994, transaction. The prosecution did not call the witness because she apparently changed her story before the trial. Although she initially told the prosecution that she could testify that Appellant had been selling crack cocaine and that she had told him how to package it and how much to charge for it, she told the prosecution on the morning of the trial that she did not know anything about Appellant selling crack cocaine. She instead testified for the defense that she never knew Appellant to sell crack cocaine. Some discussion occurred as to the possibility that this witness might have been

tape recorded when she gave her original statement to the prosecution. The prosecution, however, said that it did not know of, nor did it have in its possession, any such tape. The prosecution, consequently, was not under any obligation to produce a statement which it did not have. W.R.Cr.P. 26.2(a), (f).

Appellant lastly argues that the prosecution failed to comply with Appellant's demand for notice of all W.R.E. 404(b) evidence which the prosecution intended to use at the trial. Once again, Appellant makes this bare assertion without detailing how he was prejudiced. Since the burden of establishing prejudice is on Appellant, we cannot rule in his favor on this issue.

Appellant has failed to demonstrate how any of the evidence which he argues should have been provided to him would have been exculpatory or how failure to receive the evidence prejudiced him in such a way that would undermine our confidence in the fairness of his trial. Mere assertions that evidence would have changed the outcome of the trial or that the failure to receive evidence was prejudicial without explanations as to how and why are of no help to us in determining these types of issues. We conclude that Appellant's right to have a fair trial was not compromised.

## CONCLUSION

The trial court did not commit any reversible errors in the issues presented in this case. Appellant's conviction is

Affirmed.